## S03A1473. HUDSON v. THE STATE.
(591 SE2d 807)

HUNSTEIN, Justice.

Hilton Nathaniel Hudson, Jr. was convicted of murder and firearm possession charges arising out of the 1993 shooting death of

Charles Walters.[1] He appeals from the denial of his motion for new trial, contending that his speedy trial and due process rights were violated, that he received ineffective assistance of counsel and that limiting instructions should have been given by the trial court. Finding no error, we affirm.

1. The jury was authorized to find that the victim, Charles Walters, had worked for many years as a handyman for Hudson's mother. Around 7:00 p.m. on July 29, 1993, Eric Fulse drove Hudson and James Stephens to the home of Hudson's mother where Walters was in the yard, working on a lawn mower. Hudson complained about Walters "juicing my mom and taking her money." Hudson spoke with Walters, then returned to the car; the three men drove off with Walters in his own car directly behind them. After one brief stop the two cars proceeded to O'Kelley Drive where Walters parked his car behind Hudson's. Hudson exited his vehicle, walked back to Walters and was observed talking to the victim when Fulse and Stephens heard a shot. As Hudson returned to the car, Stephens saw Hudson put a handgun inside his pants. Both Fulse and Stephens observed the victim slumped over in his car. Expert testimony established that the victim was shot twice, in his left arm and in his left eye. The latter shot, which caused the victim's death, was fired with the gun's muzzle in contact with the victim's eye. Both shots had a downward, left-right trajectory. The State also introduced a certified copy of Hudson's prior felony conviction into evidence.

The evidence adduced was sufficient to enable a rational trier of fact to find Hudson guilty of the charged crimes beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Hudson contends he was denied his constitutional right to a speedy trial.[2] Contrary to Hudson's contention, any delay between November 1994, when the warrant issued for his arrest, and July 1996, when the arrest warrant was served on Hudson,[3] does not

---

[1] The crimes occurred on July 29, 1993. Hudson was indicted October 2, 1996 in Dougherty County on charges of murder, felony murder (based on aggravated assault and possession of a firearm by a convicted felon), possession of a firearm by a convicted felon and possession of a firearm during the commission of a felony. He was found guilty on all charges on March 3, 1998 and was sentenced on March 19, 1998 to life imprisonment with a concurrent five-year sentence on the firearm possession by a convicted felon charge and a consecutive five-year sentence on the firearm possession during commission of a felony charge. His motion for new trial, filed March 23, 1998 and subsequently amended, was denied May 21, 2003. A notice of appeal was filed May 27, 2003. The appeal was docketed June 20, 2003 and was orally argued September 8, 2003.

[2] Although Hudson filed a statutory demand for a speedy trial within three weeks of his indictment, that demand was subsequently withdrawn.

[3] The record reflects that Hudson was incarcerated on an unrelated charge between November 1994 and July 1996.

implicate Hudson's speedy trial rights. See *Haisman v. State*, 242 Ga. 896 (2) (252 SE2d 397) (1979) (due process not speedy trial rights implicated in length of delay prior to arrest or indictment).

The trial court properly analyzed Hudson's contention that he was denied his right to a speedy trial under the four part test set forth in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972). See generally *Tripp v. State*, 276 Ga. 104 (575 SE2d 507) (2003).

(a) The record supports the trial court's finding that the length of the delay consisted of the six-month period between Hudson's arrest in July 1996 and the motion for a continuance filed by his attorney in January 1997 and the nine-month period between June 1997 (when the last defense motion for continuance expired) and March 1998, when trial was had.[4]

(b) As to the reason for the delay, the initial delay (through May 1997) must be weighed against Hudson because it was due to change in counsel and continuance motions filed on Hudson's behalf. The delay from June 1997 until trial was attributable to the absence and unavailability of witness Stephens. Based on our review of the evidence in the record,[5] we conclude that the delay in bringing Hudson to trial should not be weighed against the State.

(c) Although Hudson timely filed a statutory demand for speedy trial, he subsequently withdrew that demand and sought a motion for continuance; further delay occurred due to a trial conflict letter defense counsel filed. Hudson did not reassert a speedy trial demand until January 1998, less than two months before Hudson was tried. We conclude that this factor must be weighed against Hudson.

(d) As for prejudice,[6] Hudson did not testify or otherwise produce

---

[4] The record reveals that the six-month delay between January and June 1997 was occasioned by continuance motions filed by the series of defense attorneys who were appointed but later withdrew from representing Hudson.

[5] The record reveals that the case was set for trial in July 1997 but was not held after Stephens, the subpoenaed eyewitness critical to the State's case, see Division 1, supra, failed to appear. A witness contempt warrant was issued at that time. After a September trial date was set in August 1997, the State filed a motion for a material witness bond as to Stephens, which was granted, with bail set at $500,000 to secure his testimony. Stephens, however, could not be located and trial was reset for January 5, 1998. The State moved in December 1997 to introduce Stephens' hearsay testimony on the basis that Stephens was unavailable. After the January trial date passed, Hudson moved to dismiss for lack of prosecution or alternatively moved for permission to file an out of time demand for speedy trial. The trial court granted the latter motion on January 14, 1998. Stephens was arrested two days later and Hudson was tried on March 2, 1998.

[6] "In analyzing the prejudice factor, we 'consider three interests: (i) preventing oppressive pretrial incarceration, (ii) minimizing anxiety and concern of the defendant, and (iii) limiting the possibility that the defense will be impaired.' [Cit.]" *State v. Johnson*, 274 Ga. 511, 513 (4) (555 SE2d 710) (2001). Factor (iii) is the most serious form of prejudice " ' "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." (Cit.)' [Cit.]" Id.

any specific evidence of oppressive pre-trial incarceration. See *Tripp, supra*. "More importantly, there is no evidence in the record that [Hudson's] defense has been impaired by the delay in bringing him to trial." *Id.* Accordingly, we find no error in the trial court's ruling that the State did not violate Hudson's constitutional right to a speedy trial.

3. Although it is the better practice for the court to give the jury a limiting instruction regarding the jury's consideration of a certified copy of a prior felony introduced by the State for purposes of establishing elements of charged crimes, failure to give such a charge absent request by the defendant is not grounds for reversal. *Williams v. State*, 263 Ga. 135 (2) (429 SE2d 512) (1993).

4. Hudson contends he received ineffective assistance of counsel. The burden was on Hudson to prove that counsel's performance was deficient and that the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Chapman v. State*, 273 Ga. 348 (2) (541 SE2d 634) (2001). An appellate court will uphold a trial court's findings of fact on a claim of ineffective assistance of counsel unless those findings are clearly erroneous; we review the trial court's legal conclusions de novo. *Washington v. State*, 276 Ga. 655 (3) (581 SE2d 518) (2003).

(a) Hudson contends his trial counsel was ineffective for failing to interview, subpoena and introduce at trial the testimony of witnesses he contends the defense could have used to show that someone else killed the victim. In support of this contention Hudson relies upon unsworn witness statements made during police interviews that were admitted by the trial court at the motion hearing solely for the limited purpose of establishing that these statements were available to trial counsel in preparation of the defense. Similarly, Hudson argues that counsel was ineffective for failing to possess and read police witness statements Hudson contends the State failed to provide the defense. None of the witnesses who made these statements were subpoenaed or present at the motion hearing to testify to the matters contained in the police documents and the trial court properly refused to consider the unsworn police statements as evidence of the truth of the matters discussed therein. OCGA § 24-3-1; see generally *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982) (hearsay generally includes statements made out of court that are offered in evidence to prove the truth of the matter stated in the out-of-court statement).

Based on Hudson's failure to produce at the motion hearing the witnesses whose statements he contends were relevant to his defense, the trial court correctly concluded that Hudson did not carry his burden of proving that counsel's performance was deficient for not reading the statements and interviewing, subpoenaing and pro-

ducing these witnesses at trial. E.g., *McFarlin v. State*, 259 Ga. App. 838 (4) (578 SE2d 546) (2003) and *Jividen v. State*, 256 Ga. App. 642 (1) (a) (569 SE2d 589) (2002) (where a missing witness does not testify at the motion for new trial hearing, no evidence supports the claim that the witness is crucial to the defense or that the witness could have been located). Moreover, we find that counsel's tactical decision not to pursue this evidence, as explicated at the motion hearing,[7] fell within the bounds of reasonable professional conduct. See *McFarlin*, supra.

(b) Although Hudson contends that trial counsel's failure to investigate the victim's time of death deprived Hudson of an alibi defense, Hudson presented no evidence at the motion hearing to establish that the victim's time of death could have been accurately determined so as to cast doubt on his attorney's decision not to investigate the matter. This contention is thus meritless. See *Bryant v. State*, 274 Ga. 798 (2) (560 SE2d 23) (2002).

(c) Hudson did not question his trial counsel regarding the reasons why counsel chose not to move for limiting instructions regarding the jury's consideration of a certified copy of Hudson's prior felony conviction. "In the absence of contrary evidence, defense counsel's actions are presumed to be part of trial strategy. [Cits.]" *Thomas v. State*, 268 Ga. 135, 139-140 (12) (485 SE2d 783) (1997). Hudson has thus failed to show anything that would demonstrate that his trial counsel failed to exercise reasonable professional judgment in his handling of this matter. See id.

(d) Defense counsel exercised reasonable trial strategy when he chose to preserve opening and concluding closing argument instead of offering evidence to impeach a police officer with pre-trial testimony that did not conflict with his trial testimony or to impeach one of the two eyewitnesses by using a 1990 felony conviction.[8] See *Harris v. State*, 274 Ga. 422 (9) (554 SE2d 458) (2001). Based on our review of the transcript, we disagree with Hudson that trial counsel's performance was deficient in regard to his cross-examination of the two eyewitnesses. See id.

5. We find no merit in Hudson's claims of prosecutorial miscon-

---

[7] Trial counsel testified that he did not use this evidence because he wanted to preserve closing argument and because he did not consider the proffered witnesses to be credible, in that the proffered witnesses' stories were not logical or consistent and conflicted with crime scene evidence, in that (1) statements claiming the victim was seen alive the morning of July 30 conflicted with crime scene evidence regarding the dried blood found on the victim's body when police investigated the crime that morning at 7:30 a.m. and (2) statements about the drugs and/or debt motive for killing the victim conflicted with crime scene evidence showing that neither the victim's wallet nor cocaine located in plain view in the victim's vehicle had been taken.

[8] Trial counsel did establish at trial that the witness was arrested and in jail ten days before he contacted police about Hudson.

duct. Hudson failed to establish that the State suppressed favorable evidence or that his counsel could not have obtained the evidence through reasonable diligence, as required to establish a claim under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). See *Mize v. State*, 269 Ga. 646 (2) (501 SE2d 219) (1998). As the trial court correctly found, Hudson did not establish that a deal existed between the State and Stephens or that the officer who spoke to Stephens misrepresented the truth when the officer testified at trial that Stephens did not ask for help at the time Stephens first came forward with information about the killing. That Stephens may have expected help for his cooperation does not establish that a deal or agreement was made between him and the State. See *Klinect v. State*, 269 Ga. 570 (2) (501 SE2d 810) (1998). Finally, we agree with the trial court that inconsistencies in Stephens's testimony did not rise to the level of perjury. See *Butler v. State*, 273 Ga. 380 (4) (541 SE2d 653) (2001).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 12, 2004 —
RECONSIDERATION DENIED FEBRUARY 13, 2004.

*James N. Finkelstein*, for appellant.

*Kenneth B. Hodges III, District Attorney, Bradford R. Pierce, Assistant District Attorney, Thurbert E. Baker, Attorney General, Brian K. Gorman, Assistant Attorney General*, for appellee.