## S08A0493. RUFFIN v. THE STATE.

(663 SE2d 189)

SEARS, Chief Justice.

Roderick Ruffin was indicted in April 2005 for malice murder and other crimes in connection with the shooting death of Allen Burdette two years earlier. After his trial date was continued a third time because of the State's insistence that he and a co-defendant be tried together and the government's difficulties in providing him with conflict-free appointed counsel, Ruffin filed a motion to dismiss the indictment on the ground that his constitutional right to a speedy trial had been violated. The trial court denied the motion, and Ruffin appealed. For the reasons that follow, we affirm.

1. Allen Burdette was shot to death on September 27, 2003. On April 5, 2005, a Fulton County grand jury indicted Ruffin and Spencer Thomas for malice murder, felony murder, attempted armed robbery, conspiracy to commit armed robbery, and two counts of aggravated assault. Ruffin was also charged with possession of a firearm by a convicted felon. A third alleged participant in the crimes, Marktavious Brown, died prior to the grand jury's indictment of Ruffin and Thomas.

A warrant issued for Ruffin's arrest, and he spent the next two-and-a-half months in jail before making bond. Ruffin's freedom was short-lived, however, as he was rearrested less than three months later on September 9, 2005, on a charge of illegal possession of methylenedioxymethamphetamine (commonly known as "ecstasy"). In the meantime, Ruffin missed a court date and forfeited his bond. On November 22, 2005, the trial court denied Ruffin's motion for reinstatement of his bond. As a result, Ruffin spent approximately six months of calendar year 2005 behind bars.

On March 3, 2006, as the anniversary of Ruffin's indictment approached, the trial court set the case for a final plea hearing on July 7, 2006, with the trial to follow on July 28, 2006. Ruffin did not

enter into a plea agreement with the District Attorney, and the final plea hearing came and went. Nevertheless, Ruffin's trial did not start on July 28, 2006. Instead, the trial court specially set the trial to begin a month-and-a-half later, on September 5, 2006.[1]

On the appointed day, Ruffin appeared in court for his trial. He had subpoenaed his witnesses and prepared his trial exhibits. Despite the special setting and his readiness to proceed, the trial did not go forward because the attorney appointed to represent Ruffin's co-defendant Thomas had recently left the Public Defender's office. Wanting to avoid further delay while he was incarcerated, Ruffin asked the trial court to sever his case from Thomas's and try him immediately. However, the District Attorney objected, and the trial court denied Ruffin's request for severance. The trial court specially set the trial date a second time for about three months out, on November 27, 2006, and denied Ruffin's renewed motion to set aside the bond forfeiture.

A week before trial, counsel for Ruffin, Thomas, and the District Attorney were all present at a calendar call when the Fulton County Conflict Defender Office informed the court that it could not continue representing Thomas due to its prior representation of one of the witnesses in the case. Over Ruffin's objection, the trial date was continued again, this time indefinitely, to allow for the appointment of new counsel for Thomas. Two weeks later, on December 13, 2006, Ruffin filed a third motion to set aside his bond forfeiture and a motion to dismiss the indictment due to a violation of his state and federal constitutional right to a speedy trial.[2]

For the next six months, the trial court neither ruled on Ruffin's motions nor set his case for trial. Finally, on June 18, 2007, the trial court specially set the trial a third time for June 25, 2007. Again, Ruffin appeared, ready for trial. However, the trial court first took up all pending motions. The trial court denied Ruffin's motion to dismiss the indictment and his third motion to set aside his bond forfeiture. Court was adjourned for the day after Ruffin informed the trial court that he planned an immediate appeal of the order denying his motion to dismiss the indictment, and he subsequently filed a timely notice of appeal.

2. The right to a speedy trial is a great bulwark of freedom against the power of an overreaching government.[3] Thus, the Sixth

---

[1] Under Georgia procedural practice, "specially setting" a trial is generally the best way to ensure that it goes forward on a date certain.

[2] Ruffin does not allege a violation of his statutory right to a speedy trial. See OCGA §§ 17-7-170 to 17-7-172.

[3] See *Klopfer v. North Carolina*, 386 U. S. 213, 226 (87 SC 988, 18 LE2d 1) (1967) ("The history of the right to a speedy trial and its reception in this country clearly establish that it

Amendment of the Bill of Rights guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial."[4] The Civil War Amendments made the Sixth Amendment speedy trial right enforceable in state criminal prosecutions.[5] However, most states had long ago enshrined the right to a speedy trial in their state constitutions, and today every state protects the right to a speedy trial under state law in addition to the federal constitutional mandate.[6] The Georgia Constitution of 1983 affirms that "[i]n criminal cases, the defendant shall have a . . . speedy trial."[7] The speedy trial right enshrined in the Georgia Constitution is coextensive with the federal guarantee.[8]

As constitutional provisions go, the text of the Sixth Amendment's Speedy Trial Clause is particularly unilluminating. The same can be said of the extant evidence regarding the intent of the framers who drafted it and the people who ratified it and made it a part of the supreme law of the land.[9] There are no early constructions by the United States Supreme Court, which in the nation's first 170 years gave it only passing notice in less than a handful of decisions.[10] However, starting in the late 1950's and early 1960's, and continuing through most of the next two decades, the Supreme Court decided a series of cases involving the Speedy Trial Clause that provide not only the basic framework for analyzing constitutional speedy trial claims, but also answers to most of the specific questions that arise in the constitutional speedy trial context.[11]

---

is one of the most basic rights preserved by our Constitution."). See also id. at 223 ("[T]he right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment. That right has its roots at the very foundation of our English law heritage.").

[4] U. S. Const. Amend. VI.

[5] *Klopfer*, supra, 386 U. S. at 222-223. See U. S. Const. Amend. XIV, Sec. I ("No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . .").

[6] *Klopfer*, supra, 386 U. S. at 225-226 & n. 21; *United States v. Provoo*, 17 F.R.D. 183, 197 (D. Md.), summarily aff'd, 350 U. S. 857, 857 (76 SC 101, 100 LE 761) (1955).

[7] Ga. Const. 1983, Art. I, Sec. I, Par. XI (a).

[8] *Henry v. State*, 263 Ga. 417, 418 (434 SE2d 469) (1993); *Redd v. State*, 261 Ga. 300, 301 n. 1 (404 SE2d 264) (1991); *Fleming v. State*, 240 Ga. 142, 144 (240 SE2d 37) (1977).

[9] See, e.g., *Dickey v. Florida*, 398 U. S. 30, 41 n. 2 (90 SC 1564, 26 LE2d 26) (1970) (Brennan, J., concurring) ("Records of the intent of its Framers are sparse. There is, for example, no account of the Senate debate, and the House deliberations give little indication of the Representatives' intent.") (citing Note, *The Right to a Speedy Trial*, 20 Stan. L. Rev. 476, 484-485 (1968)).

[10] *Pollard v. United States*, 352 U. S. 354, 361-362 (77 SC 481, 1 LE2d 393) (1957); *Provoo*, supra, 350 U. S. 857; *Beavers v. Haubert*, 198 U. S. 77, 86-87 (25 SC 573, 49 LE 950) (1905). See also *Smith v. United States*, 360 U. S. 1, 10 (79 SC 991, 3 LE2d 1041) (1959).

[11] *United States v. Loud Hawk*, 474 U. S. 302 (106 SC 648, 88 LE2d 640) (1986); *United States v. MacDonald*, 456 U. S. 1 (102 SC 1497, 71 LE2d 696) (1982) (*MacDonald II*); *United States v. MacDonald*, 435 U. S. 850 (98 SC 1547, 56 LE2d 18) (1978) (*MacDonald I*); *Dillingham v. United States*, 423 U. S. 64 (96 SC 303, 46 LE2d 205) (1975); *Moore v. Arizona*, 414 U. S. 25 (94 SC 188, 38 LE2d 183) (1973); *Strunk v. United States*, 412 U. S. 434 (93 SC

The template for deciding all constitutional speedy trial claims under the Sixth Amendment and the Georgia Constitution is laid out in the 1972 case of *Barker v. Wingo* and the 1992 decision in *Doggett v. United States*, which is to date the Supreme Court's last detailed discussion of the topic.[12] The analysis has two stages. First, the court must determine whether the interval from the accused's arrest, indictment, or other formal accusation to the trial is sufficiently long to be considered "presumptively prejudicial."[13] If not, the speedy trial claim fails at the threshold. If, however, the delay has passed the point of presumptive prejudice, the court must proceed to the second step of the *Barker-Doggett* analysis, which requires the application of a delicate, context-sensitive, four-factor balancing test to determine whether the accused has been deprived of the right to a speedy trial.

(a) *Presumptive Prejudice.* For serious crimes such as murder that do not involve unusual complexities — e.g., a decision by the State to seek the death penalty, allegations of a vast interstate conspiracy, or the involvement of a sophisticated crime syndicate — one year generally marks the point at which expected deliberateness in the prosecution of a criminal matter turns into presumptively prejudicial delay.[14] The period of delay under consideration in this appeal began on April 5, 2005, when the grand jury indicted Ruffin, and it ended over two years later on June 28, 2007, when the trial court denied Ruffin's motion to dismiss the indictment.[15] Thus, the total pretrial delay in question is two years, two months, and twenty-three days. The State concedes, and we agree, that this case long ago crossed the presumptive prejudice threshold. Accordingly, we must proceed to the second stage of the constitutional speedy trial analysis.

(b) *Barker-Doggett Balancing Test.* There are four considerations that always figure into the second stage of the *Barker-Doggett* analysis. No one factor is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."[16] The four

---

2260, 37 LE2d 56) (1973) (plurality opinion); *United States v. Marion*, 404 U. S. 307, 321 (92 SC 455, 30 LE2d 468) (1971); *Dickey*, supra; *Smith v. Hooey*, 393 U. S. 374 (89 SC 575, 21 LE2d 607) (1969); *Klopfer*, supra; *United States v. Ewell*, 383 U. S. 116 (86 SC 773, 15 LE2d 627) (1966). See also *United States v. Taylor*, 487 U. S. 326 (108 SC 2413, 101 LE2d 297) (1988); *United States v. Von Neumann*, 474 U. S. 242 (106 SC 610, 88 LE2d 587) (1986); *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in United States Currency*, 461 U. S. 555 (103 SC 2005, 76 LE2d 143) (1983).

[12] *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972); *Doggett v. United States*, 505 U. S. 647 (112 SC 2686, 120 LE2d 520) (1992).

[13] *Doggett*, supra, 505 U. S. at 652 n. 1; *Barker*, supra, 407 U. S. at 530.

[14] *Doggett*, supra, 505 U. S. at 652 n. 1; *Barker*, supra, 407 U. S. at 531.

[15] See, e.g., *Salahuddin v. State*, 277 Ga. 561, 562 (592 SE2d 410) (2004) (treating relevant interval as time from indictment to entry of order denying motion to bar trial).

[16] *Barker*, supra, 407 U. S. at 533.

factors emphasized in *Barker* and *Doggett* do not constitute an exhaustive list; they "have no talismanic qualities" and "must be considered together with such other circumstances as may be relevant" given the animating principles behind the speedy trial guarantee.[17] Thus, the second stage of the constitutional speedy trial analysis requires courts to "engage in a difficult and sensitive balancing process" and "necessarily compels them to approach speedy trial cases on an ad hoc basis."[18]

As stated in *Doggett*, the four factors that form the core of the constitutional speedy trial balancing test are:

> [i] whether delay before trial was uncommonly long, [ii] whether the government or the criminal defendant is more to blame for that delay, [iii] whether, in due course, the defendant asserted [the] right to a speedy trial, and [iv] whether he [or she] suffered prejudice as the delay's result.[19]

Ruffin has pointed to no circumstance in this case that is not adequately encapsulated within the four criteria from *Barker* and *Doggett*, and our own review of the record has uncovered none. Accordingly, we turn now to an examination of the four factors common to all speedy trial claims.

(i) *Whether the Delay Before Trial Was Uncommonly Long.* Excessive delay has a tendency to compromise the reliability of trials "in ways that neither party can prove or, for that matter, identify."[20] Thus, while a lengthy pretrial delay cannot support a finding of a speedy trial violation without regard to the other three *Barker-Doggett* criteria, "it is part of the mix of relevant facts, and its importance increases with the length of delay."[21] The length of the pretrial delay in absolute terms plays a role in the threshold determination of presumptive prejudice. However, it also wears another hat as one of the four interrelated criteria that must be weighed in the balance at the second stage of the *Barker-Doggett* analysis. It is important that trial courts not limit their consideration of the lengthiness of the pretrial delay to the threshold

---

[17] *Barker*, supra, 407 U. S. at 533.

[18] *Barker*, supra, 407 U. S. at 530, 533.

[19] *Doggett*, supra, 505 U. S. at 651. See also *Barker*, supra, 407 U. S. at 530 (describing four factors as "[l]ength of delay, the reason for the delay, the defendant's assertion of [the] right, and prejudice to the defendant").

[20] *Doggett*, supra, 505 U. S. at 655. See *Barker*, supra, 407 U. S. at 532 ("There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.").

[21] *Doggett*, supra, 505 U. S. at 656.

question of presumptive prejudice and remember to count it again as one of four criteria to be weighed in the balancing process at the second stage of the *Barker-Doggett* analysis. As the Supreme Court has explained, "[t]his latter enquiry is significant to the speedy trial analysis because . . . the presumption that pretrial delay has prejudiced the accused intensifies over time."[22] The uncommon length of the pretrial delay thus merits consideration beyond its use as a liminal screening mechanism.[23]

Two years, two months, and twenty-three days is an exceptionally long time to keep a presumptively innocent person in jail on the strength of nothing more than a grand jury's finding of probable cause, even where the top count of the indictment is murder. Ruffin was physically incarcerated for all but about three months of this period. As the Supreme Court said in *Barker*:

> We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent.[24]

The State argues that we should not concern ourselves with the fact that Ruffin spent most of the pretrial delay incarcerated, because his incarceration for all but the first two-and-a-half months is attributable to his own actions in missing a court date and in possessing illegal drugs. There are several flaws in this argument. First, Ruffin claims he never received notice of the missed court date, and that as soon as he found out about it, he contacted the court and received erroneous information from a court agent who misled him into believing that the matter had been resolved and that he need do nothing further. The trial court made no factual finding regarding

---

[22] *Doggett*, supra, 505 U. S. at 652; *Boseman v. State*, 263 Ga. 730, 732 (438 SE2d 626) (1994).

[23] See *Doggett*, supra, 505 U. S. at 652.

[24] *Barker*, supra, 407 U. S. at 532-533 (footnotes omitted).

these allegations, and the correctness of the trial court's decision to declare Ruffin's bond forfeited and subsequent refusals to reinstate the bond are not properly before us in any event.

Second, Ruffin denies the drug possession charge, and nothing in the record indicates that he has ever been tried for his alleged crime, despite the fact that it is going on three years now since he was arrested for it. Suffice it to say that the State cannot rely on its delay in prosecuting one matter to defeat a constitutional speedy trial claim in another.[25] Third, even if the State were correct and we were to ignore the fact that Ruffin has been incarcerated for most of the pretrial delay, it does not follow that Ruffin's constitutional speedy trial claim would automatically fail. Release on bond does not absolve the State of its constitutional obligation to bring those accused of committing crimes to trial in a speedy manner. The Supreme Court rejected precisely this argument in its first case holding that the Speedy Trial Clause applies directly to the states through the Due Process Clause of the Fourteenth Amendment.[26] As the Court explained in *Barker*, "even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility."[27]

The pretrial delay in this case far exceeds the one-year benchmark for presumptive prejudice, and it is unusual even in comparison with other non-capital murder cases.[28] To make matters worse, the record shows that by the time the grand jury indicted Ruffin on April 5, 2005, the police had already finished their investigation of

---

[25] Even a conviction on the drug possession charge would not entirely moot Ruffin's speedy trial claim. As the Supreme Court has explained:

At first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from "undue and oppressive incarceration prior to trial." But the fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge. First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed. Secondly, under procedures now widely practiced, the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against him.

*Hooey*, supra, 393 U. S. at 378 (footnote omitted).

[26] See *Klopfer*, supra, 386 U. S. at 214 ("The question involved in this case is whether a State may indefinitely postpone prosecution on an indictment without stated justification over the objection of an accused who has been discharged from custody.").

[27] *Barker*, supra, 407 U. S. at 533. Accord *Marion*, supra, 404 U. S. at 320. See *Provoo*, supra, 17 F.R.D. at 199 (imagining world without Speedy Trial Clause in which "[d]efendants might have prosecutions hang over their heads, like the sword of Damocles, for years, without an effort being made to bring them to trial") (citation and punctuation omitted).

[28] See *Williams v. State*, 282 Ga. 561, 564 (651 SE2d 674) (2007) (noting, in discussion of pretrial delay in non-capital cases, that "several murder convictions appealed to this Court recently have featured pre-trial delays of twelve to sixteen months").

the case, the necessary forensic testing was complete, and the State had in its possession videotaped statements from both Ruffin and Brown. Accordingly, this factor weighs against the State on the *Barker-Doggett* scale. To the extent the trial court overlooked this factor in the four-factor balancing process, it erred.

(ii) *Whether the Government or the Criminal Defendant Is More to Blame for the Delay*. Some amount of pretrial delay is unavoidable, and even quite extended intervals between arrest or indictment and trial are sometimes both necessary and reasonable.[29] Consequently, the reason for the delay is pivotal in evaluating the strength of a constitutional speedy trial claim, as it can color the consideration of all other factors. Thus, as the United States Supreme Court put it, "[t]he flag all litigants seek to capture is the second factor, the reason for the delay."[30]

Deliberate delay to gain an improper advantage over the accused strikes at the very heart of the speedy trial guarantee and is thus "weighted heavily against the government" in the *Barker-Doggett* balancing process.[31] Delays designed to hamper a defendant's ability to mount a successful defense, to harass the defendant, or to coerce him or her into testifying against a co-defendant or otherwise turning state's evidence all fall into this category.[32] At the opposite extreme are situations where it is the defendant who requested or otherwise engineered the delay — say, for example, by going on the lam to avoid prosecution, filing a series of frivolous pretrial motions, or securing the unavailability of a critical prosecution witness. In such cases, it will be nearly impossible for the defendant to make out a violation of the Speedy Trial Clause.[33]

However, most reasons for pretrial delay are far more pedestrian, falling somewhere in between these two poles. Some are inherent in the adversarial process itself. For example, it may take the government quite some time to track down critical witnesses and evidence, even when it is being as diligent as possible.[34] Similarly, a certain amount of delay must be tolerated if trial and appellate

---

[29] *Barker*, supra, 407 U. S. at 521. See *Ewell*, supra, 383 U. S. at 120 ("[I]n large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself.").

[30] *Loud Hawk*, supra, 474 U. S. at 315.

[31] *Barker*, supra, 407 U. S. at 531 & n. 32; *Ewell*, supra, 383 U. S. at 120.

[32] *Doggett*, supra, 505 U. S. at 656; *Barker*, supra, 407 U. S. at 531 & n. 32.

[33] See *Barker*, supra, 407 U. S. at 529 ("We hardly need add that if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine, the demand rule aside.").

[34] *Doggett*, supra, 505 U. S. at 652-653; *Barker*, supra, 407 U. S. at 531.

courts are to decide motions and appeals in a just and thoughtful manner.[35] As long as delays of this nature are appropriately limited, they militate neither for nor against a finding of a speedy trial violation; they are truly neutral in the *Barker-Doggett* balancing process.[36]

Other common reasons for delay include overcrowded dockets, the government's failure to provide for sufficient numbers of judges, prosecutors, or indigent defense counsel, neglect by the prosecution or other government agents, mere convenience of the prosecution, or the desire to avoid the expense of separate trials for two defendants involved in the same crime.[37] Each of these reasons must be counted against the government in the *Barker-Doggett* analysis, though less heavily than delay designed to sabotage the accused's case.[38] As the Supreme Court has explained:

> Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him. . . .
>
> . . . Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness . . . . Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecuto-

---

[35] *Loud Hawk*, supra, 474 U. S. at 315.

[36] *Loud Hawk*, supra, 474 U. S. at 312-313; *Barker*, supra, 407 U. S. at 531.

[37] *Strunk*, supra, 412 U. S. at 436; *Dickey*, supra, 398 U. S. at 38. See *Hooey*, supra, 393 U. S. at 380 n. 11 ("[T]he short and perhaps the best answer to any objection based upon expense was given by the Supreme Court of Wisconsin in a case much like the present one: 'We will not put a price tag upon constitutional rights.'") (citation omitted); *Barker*, supra, 407 U. S. at 538 (White, J., concurring) ("[U]nreasonable delay in run-of-the-mill criminal cases cannot be justified by simply asserting that the public resources provided by the State's criminal-justice system are limited and that each case must await its turn.").

[38] *Strunk*, supra, 412 U. S. at 436; *Barker*, supra, 407 U. S. at 531.

rial priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it.[39]

Finally, "[w]here no reason appears for a delay, we must treat the delay as caused by the negligence of the State in bringing the case to trial."[40]

The trial court found that the extraordinary pretrial delay in this case was due to the multiple substitutions of counsel for Ruffin's co-defendant. The trial court held that the substitutions were the fault of neither the State nor Ruffin and were therefore entitled to no weight at all in the *Barker-Doggett* analysis. But it is inaccurate to say that the substitutions of counsel for Ruffin's co-defendant were the sole reason that Ruffin's trial was delayed. The substitutions of counsel for Thomas only affected the timing of Ruffin's trial because the State insisted on trying the two men together over Ruffin's strenuous objection. Ruffin twice asked the trial court to sever his case from that of his co-defendant so that he could proceed to trial immediately, and the State opposed the requests. Under these circumstances, it was error for the trial court to hold that the State and Ruffin were equally to blame for the extended pretrial delay.

The trial court's error stemmed from its equation of the *prosecution* with the *State*. However, the Supreme Court has made it clear that in the *Barker-Doggett* analysis, the "government" includes all state actors, even trial and appellate court judges.[41] The relevant inquiry for purposes of the second factor is not whether the *prosecutor* or the accused bears more responsibility for the delay, but "whether the *government* or the criminal defendant is more to blame for that delay."[42] Analyzed in this light, it is clear that the second factor weighs against the State. First, the federal Constitution requires the states to provide conflict-free appointed counsel to indigent criminal defendants. The responsibility for the State's failure to do so for Thomas in a timely manner cannot be laid at

---

[39] *Doggett*, supra, 505 U. S. at 656-657.

[40] *Brannen v. State*, 274 Ga. 454, 455 (553 SE2d 813) (2001) (quoting *Boseman*, supra, 263 Ga. at 733). See *Dickey*, supra, 398 U. S. at 51 (Brennan, J., concurring) ("If the defendant does not cause the delay of his prosecution, the responsibility for it will almost always rest with one or another governmental authority."); *Cain v. Smith*, 686 F2d 374, 382 (6th Cir. 1982) ("On appeal, the prosecution has the burden of explaining the cause for pre-trial delay. Unexplained delay is weighed against the prosecution.").

[41] *Loud Hawk*, supra, 474 U. S. at 315.

[42] *Doggett*, supra, 505 U. S. at 651 (emphasis supplied).

Ruffin's doorstep. Second, the prosecution itself objected to Ruffin's requests for severance and an immediate separate trial. Ruffin opposed the pretrial delay, while the prosecution actively sought it. In this situation, it is the "government," not the "criminal defendant," who is "more to blame for that delay."[43] The trial court erred in failing to weigh this factor against the State.

(iii) *Whether, in Due Course, the Defendant Asserted the Right to a Speedy Trial.* Pretrial delay often works to the advantage of the accused, because the government is constitutionally required to prove each element of its case beyond a reasonable doubt. Thus, in the main, the dimming of memories and loss of evidence that inevitably accompany the passage of time tend to help rather than hinder the accused,[44] with the result that "[d]elay is not an uncommon defense tactic."[45] Many criminal defendants, particularly when they have been released on bond pending trial, would therefore prefer to drag out the process as long as possible. The Sixth Amendment and the corresponding provision of the Georgia Constitution place the burden squarely on the government to ensure that individuals accused of crime are brought to trial in a timely manner.[46] Nevertheless, the accused bears some responsibility to invoke the speedy trial right and put the government on notice that he or she, unlike so many other criminal defendants, would prefer to be tried as soon as possible.

The accused is not required to demand a speedy trial at the first available opportunity, for the Supreme Court has expressly rejected the demand-waiver approach to the constitutional speedy trial right.[47] Even so, a defendant who fails to assert the right at any point in the trial court will have an extremely difficult time establishing a violation of his or her constitutional right to a speedy trial.[48] In order to invoke the right, the accused need not file a formal motion, though

---

[43] *Doggett,* supra, 505 U. S. at 651.

[44] *Loud Hawk,* supra, 474 U. S. at 315. See *Marion,* supra, 404 U. S. at 322 n. 14 (discussing policies behind requirement of prompt trial).

[45] *Barker,* supra, 407 U. S. at 521. It should be noted in this connection, though, that delay is not an unheard-of prosecution tactic either, especially where, as here, the accused is incarcerated pending trial. The risk of strategic delay by the government is singularly acute where an accused incarcerated without bond has something the government wants but refuses to give up, e.g., a confession, or testimony that would incriminate both a co-defendant and the accused.

[46] *Strunk,* supra, 412 U. S. at 437. See also *Dickey,* supra, 398 U. S. at 37-38 ("Although a great many accused persons seek to put off the confrontation as long as possible, the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial.").

[47] *Barker,* supra, 407 U. S. at 528.

[48] *Barker,* supra, 407 U. S. at 532.

that is certainly sufficient.[49] Moreover, invocation of the speedy trial right need not await "indictment, information, or other formal charge"; the accused can begin demanding that the right to a speedy trial be honored as soon as he or she is arrested.[50] The relevant question for purposes of the third *Barker-Doggett* factor is whether the accused has asserted the right to a speedy trial "in due course."[51] This requires a close examination of the procedural history of the case with particular attention to the timing, form, and vigor of the accused's demands to be tried immediately.[52]

The trial court found that "Ruffin asserted his right to a speedy trial less than a month after the matter was removed from the November 27, 2006 trial calendar." This finding is clearly erroneous. The record shows plainly that Ruffin asserted his speedy trial right almost three months earlier on September 5, 2006, when he appeared in court on the first specially set trial date with his witnesses and exhibits and requested severance of his case from his co-defendant's so that he could proceed to trial immediately.

Nevertheless, it is still true that Ruffin did not invoke his speedy trial right at the outset of the proceedings but instead waited a year-and-a-half to assert the right. Even then, he did so via an oral request for severance and an immediate trial rather than by formal motion. It was only after the trial court continued the case from the second special setting three months later that Ruffin felt moved to file a written motion complaining of an alleged deprivation of his constitutional rights.[53] It would be difficult to say that Ruffin failed, "in due course," to assert his constitutional right to a speedy trial.[54] What can be said, however, is that he did not do so concretely enough for purposes of the third *Barker-Doggett* factor until September 5, 2006. Moreover, his assertion of the right did not acquire substantial weight until December 13, 2006, after the trial was continued a second time from a special setting and Ruffin filed his motion to dismiss the indictment on speedy trial grounds.

It is somewhat troubling that it took the trial court another six months to conduct a hearing on the speedy trial question and deliver, three days later, a five-page order denying Ruffin's claim. Moreover, the decision not to take up the motion to dismiss the indictment until

---

[49] *Barker*, supra, 407 U. S. at 528-529; *Hooey*, supra, 393 U. S. at 375.

[50] *Marion*, supra, 404 U. S. at 321-322. Accord *Baker v. McCollan*, 443 U. S. 137, 144 (99 SC 2689, 61 LE2d 433) (1979).

[51] *Doggett*, supra, 505 U. S. at 651.

[52] *Barker*, supra, 407 U. S. at 528-529.

[53] Practically speaking, the filing of a formal motion to dismiss the indictment is the best way to ensure that the speedy trial issue is on the trial court's radar screen.

[54] *Doggett*, supra, 505 U. S. at 651.

the third specially set trial date had the effect in this case of further delaying Ruffin's case, when the trial court denied the motion and Ruffin indicated that he planned to appeal. Nevertheless, on balance, given the amount of time it took Ruffin to assert his right to a speedy trial and his lack of doggedness in pursuing the issue until mid-December 2006, we conclude that the trial court was correct to weigh this consideration against Ruffin in the *Barker-Doggett* balancing process.

(iv) *Whether the Accused Suffered Prejudice as a Result of the Delay.* The fourth and final factor is the inquiry into prejudice to the defendant.[55] The concept of "prejudice" in this context is not limited to consideration of the likely effect the pretrial delay had or might have on the ultimate outcome of the trial.[56] To be sure, the death of a critical defense witness or destruction of tangible evidence highly favorable to the defendant would figure prominently in any evaluation of the fourth factor, and it would weigh heavily in favor of finding a violation of the defendant's constitutional right to a speedy trial.[57] But the Speedy Trial Clause protects important constitutional values in addition to the interest in the fundamental fairness of judicial proceedings.

In our system, "the accused" is merely that — someone the government has probable cause to believe has committed a crime. The accused is presumed innocent unless and until he or she is convicted in a court of law by a jury of his or her peers. As the Supreme Court put it in one of the early speedy trial cases:

> Inordinate delay between arrest, indictment, and trial may impair a defendant's ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.[58]

---

[55] *Doggett*, supra, 505 U. S. at 651; *Barker*, supra, 407 U. S. at 530.

[56] *Moore*, supra, 414 U. S. at 26-27; *Provoo*, 17 F.R.D. at 198-199.

[57] See, e.g., *Moore*, supra, 414 U. S. at 26 n. 1; *Dickey*, supra, 398 U. S. at 38.

[58] *Marion*, supra, 404 U. S. at 320. Accord *Taylor*, supra, 487 U. S. at 340-341. See *MacDonald II*, supra, 456 U. S. at 8 ("The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless

Accordingly, "consideration of prejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim."[59]

The Supreme Court has identified three values underlying the speedy trial guarantee that warrant special consideration in the prejudice inquiry. The central aims of the Founders in enacting the Speedy Trial Clause were to "(i) prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense would be impaired."[60] The Supreme Court has instructed that "of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.' "[61]

The trial court found as a factual matter that Ruffin had failed to establish oppressive pretrial incarceration or anxiety and concern beyond that which necessarily attends confinement in a penal institution. The trial court further found that Ruffin failed to present any specific evidence that his ability to defend himself had been impaired. The trial court's conclusions in this regard are supported by the record. Accordingly, the trial court properly weighed the fourth criterion against Ruffin.

3. As explained above, the trial court erred in several respects in its legal analysis of Ruffin's constitutional speedy trial claim. Moreover, this is a very close case on the merits. There has been a delay of two years, two months, and twenty-three days in bringing Ruffin to trial. The State's investigation of the case against Ruffin was complete by the time he was indicted in April 2005. None of the pretrial delays are attributable to Ruffin, and he repeatedly appeared in court ready for trial only to see his case continued again and again with the prosecution's full support. The government's interest in the convenience and efficiency of trying Ruffin and his co-defendant together falls far short of justifying such prolonged pretrial incarceration in the face of an accused's insistent demands that the government either try him now or release him.

Nevertheless, we review a trial court's grant or denial of a motion to dismiss the indictment on speedy trial grounds for abuse of discretion only.[62] Given Ruffin's failure to present any persuasive evidence of "prejudice" as that term is used in the *Barker-Doggett*

---

substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.").

[59] *Doggett*, supra, 505 U. S. at 655.

[60] *Barker*, supra, 407 U. S. at 532. Accord *Ewell*, supra, 383 U. S. at 120.

[61] *Doggett*, supra, 505 U. S. at 654 (quoting *Barker*, supra, 407 U. S. at 532).

[62] *State v. White*, 282 Ga. 859, 861 (655 SE2d 575) (2008); *Burns v. State*, 265 Ga. 763, 763 (462 SE2d 622) (1995).

analysis, we cannot say that the trial court abused its discretion in rejecting Ruffin's speedy trial claim and denying his motion to dismiss the indictment. Central to our decision to affirm the trial court's judgment is the fact that Ruffin asserted the speedy trial right relatively late in the process.

However, the clock is still ticking. It has now been well over three years since Ruffin was indicted, and the vigor and formality with which he has pressed his constitutional speedy trial claim are no longer subject to challenge. The District Attorney should be aware that any further delay in bringing Ruffin to trial not attributable to Ruffin runs a serious risk of violating Ruffin's right to a speedy trial guaranteed by the Sixth Amendment and the Georgia Constitution. If that were to happen, then under controlling United States Supreme Court precedent, dismissal of the charges against Ruffin would be constitutionally required.[63]

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 30, 2008.

*Zell & Zell, Rodney S. Zell*, for appellant.

*Paul L. Howard, Jr., District Attorney, Ronald S. Boyter, Jr., Bettieanne C. Hart, Marc A. Mallon, Assistant District Attorneys, Thurbert E. Baker, Attorney General*, for appellee.

---

[63] *MacDonald I*, 435 U. S. at 861 n. 8; *Barker*, supra, 407 U. S. at 522. See *Strunk*, supra, 412 U. S. at 439-440 ("It is true that *Barker* described dismissal of an indictment for denial of a speedy trial as an 'unsatisfactorily severe remedy.' Indeed, in practice, 'it means that a defendant who may be guilty of a serious crime will go free, without having been tried.' But such severe remedies are not unique in the application of constitutional standards. In light of the policies which underlie the right to a speedy trial, dismissal must remain, as *Barker* noted, 'the only possible remedy.' ") (citation omitted).