## S08A1647. BROOKS v. THE STATE.
(674 SE2d 871)

Sears, Chief Justice.

The appellant, Stanley Brooks, appeals from his convictions for the malice murder of Wilmer Walters, for the aggravated assault of Kelvin Terrell, and for the possession of a firearm during the commission of a felony.[1] On appeal, Brooks contends, among other things, that his constitutional right to a speedy trial was denied and that he received ineffective assistance of counsel. Finding no merit to Brooks's contentions, we affirm.

1. Kelvin Terrell lived with his mother, Patricia Terrell, in a house on Hills Avenue in Atlanta. In the early morning hours on October 19, 2004, he left his house and walked about 50 feet to a nearby corner store to get some food. As Terrell neared the store, he walked between a man walking in the street near the corner store and another man, Wilmer Walters, who was leaning against the store. The two men were facing each other, and Terrell spoke to them. Just as Terrell passed the men, he heard six to eight gunshots and turned and saw the man leaning against the store fall to the ground. When Terrell looked back, he and the shooter looked each other in the face under the street lights. The man then pointed the gun at Terrell's head, prompting Terrell to run. The man fired several shots at Terrell, and two shots struck him in the back. Terrell, however, was able to run into the corner store. People who

---

[1] The crimes occurred on October 19, 2004. On February 15, 2005, Brooks was indicted for malice murder, felony murder, two counts of aggravated assault, and the possession of a firearm during the commission of a felony. On June 30, 2006, a jury found Brooks guilty on all counts. The felony murder count was vacated as a matter of law, and the trial court merged the aggravated assault conviction of Walters with the malice murder conviction. The court sentenced Brooks to life in prison for malice murder, to twenty concurrent years for the aggravated assault of Terrell, and to five consecutive years for the possession offense. On July 28, 2006, Brooks filed a motion for new trial, and he thereafter filed several amendments. On November 30, 2007, the trial court denied the motion for new trial, as amended. On December 28, 2007, Brooks filed a notice of appeal, and on June 17, 2008, the appeal was docketed in this Court. The appeal was subsequently submitted for decision on the briefs.

were in the store had heard the shots and locked the door after Terrell entered. At trial, Terrell stated that he got a good look at the shooter's face, and he testified about his identification of Brooks as the shooter in a pre-trial photographic lineup. Terrell also identified Brooks in court as the man who shot him and Walters. Walters died from gunshot wounds to the torso.

Patricia Terrell testified that she advised her son against going to the store in the early morning hours on October 19, 2004, but that he left the house anyway. Shortly after Kelvin left the house, Ms. Terrell heard gunshots and went to her front porch. She saw a man stop immediately in front of her house and put a gun in his clothes. The man then went to a church near her house, and a red SUV left the church parking lot at a high rate of speed. Later, Ms. Terrell picked Brooks out of a photo lineup containing six photographs. She could not, however, identify Brooks in court. Mikel Gillam, who was at Ms. Terrell's house at the time of the shooting, also said a man with a gun stopped directly in front of the house, stuck a gun in his clothes, ran down the street, and sped away in a red SUV.

In October 2004, Keisha Thompson and Brooks lived together. Thompson testified that she owned a red Chevy Blazer and a 9mm pistol. Brooks knew she owned the gun, and sometime in the middle of October 2004, she could not find her gun and reported it stolen to the police. On the night of October 18, 2004, Brooks left Thompson's house in her red Chevy Blazer and was not there when she awoke on the morning of October 19. She called Brooks and told him she needed her car to go to work, and when he arrived home, she asked Brooks where he had been. He responded that he had been out and volunteered that her tag was not on her car.

The police never recovered Thompson's gun, but they did find nine 9mm shell casings at the crime scene. On November 12, 2004, the police discovered Brooks in Thompson's red Chevy Blazer and, after Brooks exited the vehicle and entered a house, the police arrested him.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Brooks guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. Brooks contends that the trial court erred in denying his motion to dismiss his indictment based on the alleged violation of his constitutional right to a speedy trial. We disagree. Although the nineteen-month delay between the time of Brooks's arrest and the time the trial court denied his motion to dismiss is presumptively

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

prejudicial under the analysis for determining constitutional speedy trial claims,[3] we conclude that the trial court did not abuse its discretion[4] in ruling against Brooks's claim after applying the appropriate four-part balancing test.[5] In particular, as for any prejudice to Brooks's defense, Brooks makes a generalized assertion that the delay prevented him from calling two witnesses and thereby prejudiced his defense. However, Brooks knows one of the witnesses simply as "Gary," and, at the hearings on his motion to dismiss the indictment and on his motion for new trial, Brooks failed to put forward any evidence that "Gary" could have offered that would have been favorable to his defense. In fact, on cross-examination at the motion for new trial hearing, Brooks's trial counsel said he had spoken with "Gary" and did not call him to testify because his testimony would have been unhelpful.

The other witness, Kevin Head, gave a statement on the date of the crime in which he told an officer that he had seen a man threaten Kelvin Terrell six days before the shooting. At trial, on cross-examination, an officer testified about the content of Head's statement and added that he had investigated the claim and could find no evidence to substantiate it. And, at the motion for new trial hearing, Brooks failed to offer any evidence supporting his claim that Head's testimony would have aided his defense. "Given [Brooks's] generalized complaints regarding his witness[es] . . . without any real showing of harm to his defense, it cannot be said that the trial court erred in discounting his claims."[6]

Balancing the four *Barker* factors, we conclude the trial court did not abuse its discretion in denying Brooks's motion to dismiss the indictment.

3. Brooks contends the trial court erred in denying his motion to suppress evidence of Patricia Terrell's pre-trial identification of Brooks. We disagree.

"Testimony concerning a pre-trial identification of a defendant should be suppressed if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification."[7]

---

[3] See *Barker v. Wingo*, 407 U. S. 514, 530 (92 SC 2182, 33 LE2d 101) (1972). Accord *Doggett v. United States*, 505 U. S. 647, 652 (112 SC 2686, 120 LE2d 520) (1992); *Ruffin v. State*, 284 Ga. 52, 55 (663 SE2d 189) (2008).

[4] *Ruffin*, 284 Ga. at 65 (trial court's grant or denial of a motion to dismiss the indictment on speedy trial grounds is reviewed for abuse of discretion only).

[5] Id.

[6] *Bowling v. State*, 285 Ga. 43, 47 (673 SE2d 194) (2009).

[7] *Rivers v. State*, 283 Ga. 1, 5 (655 SE2d 594) (2008).

The taint which renders an identification procedure impermissibly suggestive must come from the method used in the identification procedure. An identification procedure is impermissibly suggestive when it leads the witness to an "all but inevitable identification" of the defendant as the perpetrator, or . . . is the equivalent of the authorities telling the witness, "[t]his is our suspect."[8]

Here, Patricia Terrell was shown a photographic array of six black males of about the same age; the photos of the six men were all black and white and of the same size; the lineup occurred in a room without anyone else present; and Ms. Terrell was told that the lineup may or may not include the person who committed the crime and that she should only make an identification if she could do so. Under these circumstances, the identification procedure was not so impermissibly suggestive as to have led Ms. Terrell to the "all but inevitable identification" of Brooks as the perpetrator.[9]

4. Brooks contends the trial court erred in ruling against his claim of ineffective assistance of trial counsel.

(a) Brooks first contends trial counsel provided ineffective assistance by failing to object on hearsay grounds to Thompson's testimony that Brooks told her he had removed the license plate from her vehicle. Thompson's testimony, however, was not inadmissible hearsay,[10] and trial counsel therefore was not ineffective in not objecting to it.

(b) Brooks contends counsel was ineffective in failing to object when Detective Joyner testified that Brooks refused to make a statement after his arrest. We conclude, however, that, even if trial counsel provided deficient performance in failing to object to the detective's testimony, Brooks has failed to show he was prejudiced by counsel's deficient performance.[11] The statement occurred during a matter of fact recital of the circumstances of Brooks's arrest and was not mentioned again at trial. Considering these circumstances and the strength of the evidence against Brooks, we conclude he has failed to show that, if counsel had objected, there is a reasonable probability that the outcome of the trial would have been different.[12]

---

[8] *Clark v. State*, 271 Ga. 6, 12 (515 SE2d 155) (1999) (citations omitted).

[9] Id. Although Brooks speculates that Ms. Terrell must have spoken with her son about his earlier identification of Brooks in a photo lineup and that her son must have assisted her with her identification, there is no evidence in the record to support this speculation.

[10] *Reynolds v. State*, 275 Ga. 548, 550 (569 SE2d 847) (2002).

[11] See *Strickland v. Washington*, 466 U. S. 668, 697 (104 SC 2052, 80 LE2d 674) (1984) (a court may bypass the question whether counsel's performance was deficient if it can "dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice").

[12] *Moore v. State*, 278 Ga. 397, 399-400 (603 SE2d 228) (2004) (due to fact State did not

(c) Brooks contends trial counsel was ineffective in failing to request a continuance to search for Kevin Head, who, in an unsworn statement given to the police on the day of the crimes, stated he had heard someone in a white car threaten Mr. Terrell's life one week before he was shot. Pretermitting whether trial counsel provided deficient performance in failing to request a continuance, we conclude Brooks has failed to carry his burden to show prejudice on this claim. When a defendant claims that trial counsel performed deficiently in failing to locate a witness for trial, the defendant may not rely on hearsay and speculation, including prior unsworn statements, to prove the prejudice prong of his ineffectiveness claim.[13] Here, Brooks did not subpoena Head to testify at the motion for new trial hearing, did not offer an affidavit from Head as to what his testimony would be, and, in fact, did not show he had ever been able to locate Head since the trial. Under these circumstances, Brooks failed to show a reasonable probability that Head's testimony would have produced a different outcome at trial. Brooks thus failed to carry his burden to show prejudice.[14]

(d) Brooks contends counsel was ineffective in advising Brooks that, if he testified at trial, the State could attempt to introduce his prior convictions into evidence.[15] Brooks contends this advice was in error, as a defendant must first place his character in issue before the State may introduce evidence of a defendant's criminal history. The contention, however, is without merit. Under OCGA § 24-9-84.1 (a) (2), which was enacted in 2005 and was thus in effect during Brooks's trial, if a criminal defendant testifies, the State may introduce evidence he has been convicted of a felony even if the defendant does not place his character in issue so long as the trial court "determines that the probative value of admitting the evidence substantially outweighs its prejudicial effect." If the defendant's prior crime involves "dishonesty or making a false statement," the crime is admissible without the necessity of the trial court conducting a balancing test.[16] We conclude trial counsel did not provide deficient performance in advising Brooks in this regard.

---

pursue improper questioning on defendant's silence and the strength of the circumstantial evidence of defendant's guilt, court concluded that timely objection by trial counsel would not have produced a different result at trial); *Allen v. State*, 272 Ga. 513, 516 (530 SE2d 186) (2000) (even if error to comment on defendant's silence, error harmless considering strength of evidence and the fact prosecutor did not follow up or otherwise attempt to capitalize on reference to defendant's silence).

[13] *Dickens v. State*, 280 Ga. 320, 321-324 (627 SE2d 587) (2006); *Hudson v. State*, 277 Ga. 581, 584-585 (591 SE2d 807) (2004).

[14] Id.

[15] It appears that Brooks had prior convictions for rape and other unspecified crimes.

[16] OCGA § 24-9-84.1 (a) (3).

5. Contrary to Brooks's contention, there is no evidence the State engaged in prosecutorial misconduct in failing to provide him with sufficient information to locate Kevin Head. " 'A charge of prosecutorial misconduct is a serious charge and is not to be lightly made; having raised it, appellant has the duty to prove it by the record and by legal authority.' "[17] Here, the record shows the State placed Head on its witness list, provided Brooks with what information it had concerning his location, and then communicated with Brooks before trial that it would not call Head as a witness. Brooks contends the "State failed to provide him with the relevant information to locate a critical defense witness." The State, however, acting in its role as the prosecution, has no obligation to locate defense witnesses and appears to have made a good faith effort to comply with its discovery obligations when it listed Head as a possible prosecution witness. In any event, there is no evidence of prosecutorial misconduct. Accordingly, we conclude that this enumeration is without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 9, 2009 —
RECONSIDERATION DENIED APRIL 10, 2009.

*Dell Jackson*, for appellant.
*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Amy E. Hawkins Morelli, Assistant Attorney General*, for appellee.

---

[17] *Roberts v. State*, 267 Ga. 669, 671 (482 SE2d 245) (1997) (quoting *Meredith v. State*, 211 Ga. App. 213, 215 (438 SE2d 644) (1993)).