## S09A0361. BOWLING v. THE STATE.
### (673 SE2d 194)

MELTON, Justice.

Larry Ray Bowling appeals from the denial of his motion to dismiss his indictment on the ground that his constitutional right to a speedy trial under the Federal and Georgia constitutions had been violated. We affirm.

The record shows that, on April 24, 2004, Bowling was arrested for the aggravated battery of Melody Harrell by shooting her in the head, and the charge was later upgraded on May 6, 2004 to add counts of felony murder and murder after the victim died.[1] Although Bowling never filed a statutory motion for speedy trial, he filed a motion to dismiss the indictment against him on October 4, 2006, contending that his Sixth Amendment constitutional right to a speedy trial had been violated. The trial court denied the motion to dismiss but granted a bond reduction. Bowling posted bond on October 26, 2006 and was released from custody.[2]

In January of 2007, the State discovered that its key witness, the officer who responded to the scene of the crime, had been hired by a private firm and was being deployed to Iraq. In response, the State filed a motion to take this witness's testimony by videotape, and the trial court granted the motion. The witness was thereafter questioned while he was in Texas, and the video was fed into the Georgia courtroom. Later, however, the trial court, on May 4, 2007, granted a motion in limine brought by Bowling to exclude this videotaped testimony, finding it violated his constitutional right to fully confront the witness. The State sought to appeal that decision to this Court,

---

[1] The record shows that, on the night of the shooting, Bowling and the victim were in a van that crashed into the front of a residence at approximately 2:45 a.m. When officers reported to the scene, Bowling was injured from the collision and the victim, who had been shot in the head, was nonresponsive. Bowling admitted to the shooting, but contended it was accidental.

[2] Bowling was, however, placed on house arrest. He remained free on bond until August 3, 2008, when he was arrested for a subsequent battery.

but its application was dismissed on July 9, 2007. Subsequently, Bowling's case returned to the trial calendar, and the State and Bowling's attorney agreed to continue the case. The key witness returned to the United States for approximately two weeks in August of 2008, and, this time, Bowling agreed to take the witness's testimony in a videotaped proceeding during which Bowling and his attorney were in the witness's presence. On the same day that this testimony was taken, August 29, 2008, Bowling filed a second motion to dismiss his indictment due to a violation of his constitutional right to a speedy trial. This motion was again denied, and Bowling now appeals this decision.

1. Bowling's constitutional speedy trial claim must be analyzed under the rubric of *Barker v. Wingo,* 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972). Under *Barker*'s four-part balancing test, one must consider:

> (1) the length of the delay; (2) reasons for the delay; (3) defendant's assertion of the right [to speedy trial]; and (4) the prejudice to the defendant. Standing alone, none of these factors are a necessary, or sufficient condition to a finding of deprivation of the right to a speedy trial, but rather should be considered as part of a balancing test. *Washington v. State,* 243 Ga. 329, 330 (253 SE2d 719) (1979). Thus, we must apply and weigh these factors together to determine if [Bowling]'s constitutional right to a speedy trial has been abridged. *Treadwell v. State,* 233 Ga. 468 (211 SE2d 760) (1975).

(Citation omitted.) *Layman v. State,* 284 Ga. 83, 84 (663 SE2d 169) (2008).

(a) *Length of delay*: This factor must be considered

> to some extent [to be] a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. To trigger a speedy trial analysis, an accused must allege that the interval between accusation or arrest and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. The assumption that a delay is presumptively prejudicial is improper as it can result in unnecessary judicial constitutional analysis.

(Citations, punctuation and footnote omitted.) *Wimberly v. State,* 279

Ga. 65, 66 (608 SE2d 625) (2005). As conceded by the State, the period of approximately 52 months from the date of Bowling's arrest to the date that the second motion to dismiss was denied is presumptively prejudicial. See *Brannen v. State*, 274 Ga. 454 (553 SE2d 813) (2001) (52-month delay is presumptively prejudicial). Therefore, the remaining *Barker* factors must be considered in conjunction with this factor. See *Ruffin v. State*, 284 Ga. 52 (663 SE2d 189) (2008).

(b) *Reasons for delay*: In order to evaluate the reasons for delay in bringing a defendant to trial, courts assign "various degrees of weight to the different reasons provided by the prosecution and the defense respectively. When evaluating these reasons, courts must accommodate the competing concerns of orderly appellate review and a speedy trial under the *Barker* balancing test." (Citations omitted.) *Layman*, supra, 284 Ga. at 85. In this case, the trial court cited several reasons for delay: (1) a backlog of cases in the trial court and staffing difficulties in the District Attorney's office; (2) a number of granted requests from Bowling for funds and investigative assistance, including a motion for funds to hire an investigator filed as late as August 28, 2008; and (3) the deployment of one of the State's key witnesses to Iraq in 2007 which, in turn, raised a litigated issue of whether this witness's videotaped testimony could be used at trial. In analyzing these factors, the trial court determined that the first factor weighed against the State, the second factor weighed against Bowling, and that the third factor was neutral. The trial court further found that, in any event, there was no evidence that the State deliberately made any attempt to delay Bowling's trial. The record supports the trial court's conclusions on these matters. See generally *Nelloms v. State*, 274 Ga. 179 (549 SE2d 381) (2001).

(c) *Assertion of right*: With regard to Bowling's assertion of his right to a speedy trial, the record shows that, at the earliest, the right was asserted on October 4, 2006 when Bowling filed his first motion to dismiss the indictment.[3] The record also supports the trial court's findings that Bowling never asserted a statutory right to a speedy trial, agreed to some continuances and never objected to other continuances in his case, and never acted on an explicit invitation by the trial court to file an out-of-time demand for a speedy trial. These

---

[3] Although Bowling, while represented by his current counsel, wrote a pro se letter to the trial court on February 16, 2006 contending that his first trial attorney had been ineffective for failing to procure a speedy trial, the record shows that Bowling's first attorney discussed the matter with him and determined that a request for speedy trial would have been unwarranted and detrimental, given that the indictment had not been returned and his case had not been properly investigated. In any event, Bowling concedes that this pro se letter did not comprise a proper demand for a speedy trial.

findings, in turn, support the trial court's conclusion that Bowling did not timely and vigilantly assert his constitutional right to a speedy trial.

(d) *Prejudice to defendant*: Finally, the prejudice to the defendant must be considered based on three factors: (1) whether there has been oppressive pre-trial incarceration; (2) the anxiety and concern of the accused; and (3) the possibility of harm to the accused's defense. With regard to the nature of Bowling's pretrial incarceration and his anxiety levels, the trial court determined that there was no evidence that Bowling was subjected to substandard conditions prior to his release on bond in October 2006. The record supports this finding. Although Bowling contends that certain injuries he suffered were not treated properly in jail, he provided no proof of this, and, to the contrary, he admitted that he was tended to by medical staff both in and outside of the jail. To the extent that Bowling contends that incarceration caused him to be subjected to more fear and anxiety than he would have been subjected to had he not been jailed, these anxieties are "always present to some extent, and thus absent some unusual showing [are] not likely to be determinative in defendant's favor." (Citations omitted.) *Boseman v. State*, 263 Ga. 730, 733 (1) (d) (438 SE2d 626) (1994).

With regard to prejudice to his defense, Bowling makes two contentions: (1) that a witness's account of the incident has changed over time and (2) that the van in which the murder was committed has been destroyed. As for the former alleged harm, the record shows that the defense, itself, was unable to locate and question the witness until October 29, 2007. The witness's testimony supports Bowling's contention that, at the time the victim was shot, a third person was in the van. Bowling now alleges that between the time of this initial questioning and his second motion to dismiss filed in 2008, the witness's recollection has changed. Bowling does not detail what these changes may be, but, instead, merely argues that any changes in the witness's testimony will limit her credibility. With regard to the crashed van in which the shooting occurred, that vehicle, which was owned by Bowling's brother, was impounded by the State and processed for evidence on April 24, 2004. Two days later, the van was released to a private towing company which took the steps required by law to inform the registered owner of the van's whereabouts. The van was never claimed, however, and in accordance with the towing company's policies, it was disposed of on October 11, 2004. All physical evidence removed from the van and photographs of the van were retained and made available to Bowling. Although Bowling complains about the destruction of the van, he provided no cogent testimony regarding how he may have been harmed by this destruc-

tion. Given Bowling's generalized complaints regarding his witness and the van without any real showing of harm to his defense, it cannot be said that the trial court erred in discounting his claims. See, e.g., *Smith v. State*, 284 Ga. 17 (663 SE2d 142) (2008).

2. Balancing all of these factors together, we find that the trial court did not abuse its discretion by concluding that the presumptive prejudice arising from any delay in bringing Bowling to trial was insufficient for him to prevail on his constitutional speedy trial claim, given that there was no demonstrable prejudice to Bowling's defense and Bowling was dilatory in asserting his rights. See, e.g., *Harris v. State*, 284 Ga. 455 (667 SE2d 361) (2008).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 9, 2009.

*Lyle K. Porter, Jeffrey B. Hicks*, for appellant.
*Daniel J. Porter, District Attorney, Rodney K. Miles, Assistant District Attorney, Thurbert E. Baker, Attorney General*, for appellee.