A09A1053. DAVIS v. THE STATE.
(687 SE2d 180)

DOYLE, Judge.

Christopher Antonio Davis appeals from the trial court's order denying his motion to dismiss the indictment on the ground that his constitutional right to a speedy trial had been violated. For the reasons that follow, we reverse.

We review the trial court's determination for an abuse of discretion.[1] "The deference owed the trial court's ruling is diminished, however, where it contains factual findings that are either clearly erroneous or unsupported by the record, or where it misstates or misapplies the law."[2]

The undisputed record shows that Davis was arrested on May 26, 2005, and indicted on August 17, 2005, for one count of burglary, seven counts of armed robbery, eleven counts of aggravated assault, four counts of kidnapping with bodily injury, three counts of kidnap-

[7] *Watson v. State*, 274 Ga. 689, 691-692 (3) (558 SE2d 704) (2002).
[8] Id.
[1] See *Bowling v. State*, 285 Ga. 43, 47 (2) (673 SE2d 194) (2009).
[2] *Hayes v. State*, 298 Ga. App. 338 (680 SE2d 182) (2009).

ping, and four counts of possession of a firearm during a felony. The charges stemmed from Davis's alleged involvement in the robbery of six men living in an apartment in Gwinnett County. Although Davis did not file a statutory motion for speedy trial, he filed a motion to dismiss the indictment on October 4, 2006, approximately 17 months after his arrest, asking for an immediate trial or dismissal of the indictment on the basis that he had endured an unreasonable delay in having his case come to trial. The trial court denied the motion to dismiss, but the court did grant a reduction of Davis's bond. Davis posted bond and was released from custody in December 2006.

On April 25, 2008, Davis filed a second motion to dismiss the indictment. The case was called to trial on April 28, 2008, approximately 35 months after Davis's arrest. The trial court dismissed Davis's second motion to dismiss in an order entered on June 4, 2008, and this appeal followed.

> [Davis]'s constitutional speedy trial claim must be analyzed under the rubric of *Barker v. Wingo*.[3] Under *Barker*'s four-part balancing test, one must consider: (1) the length of the delay; (2) reasons for the delay; (3) defendant's assertion of the right to speedy trial; and (4) the prejudice to the defendant. Standing alone, none of these factors are a necessary, or sufficient condition to a finding of deprivation of the right to a speedy trial, but rather should be considered as part of a balancing test. Thus, we must apply and weigh these factors together to determine if [Davis]'s constitutional right to a speedy trial has been abridged.[4]

Before balancing these factors, we must determine whether the length of the delay is presumptively prejudicial, and if so, we then must weigh that factor with the other factors to determine whether the right has been abridged.[5] Here, the trial court determined that there was an approximately 35-month delay between Davis's arrest and the date he filed the second motion to dismiss. "A delay of more than one year between the attachment of the right [here, May 26, 2005, the date of Davis's arrest] and the trial raises a threshold presumption of prejudice to the defendant."[6] Thus, the trial court correctly determined that the delay was presumptively prejudicial, triggering further analysis under *Barker*.[7]

---

[3] 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972).

[4] (Citations and punctuation omitted.) *Bowling*, 285 Ga. at 44 (1).

[5] See id. at 44-45 (1) (a). See also *Hayes*, 298 Ga. App. at 339.

[6] *Hayes*, 298 Ga. App. at 340 (1).

[7] See *Johnson v. State*, 268 Ga. 416, 417 (2) (490 SE2d 91) (1997) (holding that a

1. *Length of the delay*. "It is important that trial courts not limit their consideration of the lengthiness of the pretrial delay to the threshold question of presumptive prejudice and remember to count it again as one of four criteria to be weighed in the balancing process at the second stage of the *Barker*[ ] analysis."[8] Here, the trial court determined that the length of the delay was 35 months. Noting that the defendant had requested continuances during the two months immediately preceding the filing of his second motion to dismiss, the trial court attributed that two-month portion of the delay to the defendant, but attributed the remaining thirty-three-month portion to the State. While the trial court correctly attributed the bulk of the delay to the State, it appears the court failed to consider the length of the delay when it weighed the four *Barker* factors.[9] To the extent that the trial court overlooked this factor, it erred.[10]

2. *Reasons for the delay*. The record indicates that the State put Davis's case on the trial calendar in December 2006, and it was placed on each month's trial calendar for the following months until approximately August 2007, when the current prosecutor inherited the case from the third prosecutor assigned to the case. Between August 2007, which was approximately two years and three months after Davis's arrest, and January 2008, the State sought continuances because the new prosecutor decided to have certain pieces of evidence tested for DNA. In February and March 2008, Davis sought continuances in order to obtain an expert to testify regarding the DNA evidence, and these two months were not weighed by the trial court against the State. The State gave no reason for the three-month delay between Davis's arrest and indictment or the sixteen-month delay from Davis's indictment to December 2006, the first time the case was placed on the trial calendar.

The weight of this factor is determined by the reason given by the party for the delay and exists on a spectrum between deliberate delay to negligence, with deliberate delay weighed most heavily against the responsible party.[11] Nevertheless,

[o]ur toleration of (governmental) negligence varies inversely with its protractedness, and its consequent threat to the fairness of the accused's trial. Condoning prolonged and unjustifiable delays in prosecution would both penalize

---

21-month delay raises the presumption of prejudice); *Boseman v. State*, 263 Ga. 730, 732 (1) (a) (438 SE2d 626) (1994) (holding same with regard to 27-month delay).

   [8] (Punctuation omitted.) *Hayes*, 298 Ga. App. at 341 (2) (a).
   [9] See id.
   [10] See id.
   [11] See *Ruffin v. State*, 284 Ga. 52, 59 (2) (b) (ii) (663 SE2d 189) (2008).

YALE LAW LIBRARY

many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it.[12]

Here, the trial court correctly weighed against the State 33 months of the delay, and although it appears that the State's delay is the result only of a lack of diligence and is, therefore, not weighed as heavily against the State as deliberate delay, it still becomes a factor against the State in our analysis.

3. *Assertion of the right.* Davis first asserted his constitutional right to a speedy trial in October 2006, 17 months after his arrest, and he again asserted his right in April 2008. Relying on *State v. Lively*,[13] the State argues that Davis's motions to dismiss are insufficient assertions of his right to a speedy trial. In *Lively*, this Court stated that a "motion to dismiss or quash the indictment for denial of speedy trial, which did not request an immediate trial, *is not a demand for trial* and is not an assertion of the right to speedy trial."[14] Here, Davis specifically requested in his motions to dismiss "that he be tried immediately." Thus, the motions to dismiss sufficiently asserted Davis's right to a speedy trial, and the trial court erred in holding otherwise. This does not end our analysis, however, because even a sufficient demand must have been made in due course.[15]

While Davis was arrested on May 26, 2005, and indicted on August 17, 2005, he did not file his first motion to dismiss until October 4, 2006, 14 to 17 months later than his indictment and arrest respectively. Nevertheless, Davis filed the first motion over two months before the case was first called to trial on December 14, 2006. After the court denied the initial motion to dismiss, however, Davis waited another 17 months to file his second motion to dismiss on April 25, 2008 — the Friday preceding the trial calendar of April 28, 2008. Thus, taking into account the two lengthy periods during which Davis failed to pursue his right to a speedy trial, we weigh this factor against him, although we do not weigh it heavily against him

---

[12] *Hayes*, 298 Ga. App. at 345 (2) (b).
[13] 155 Ga. App. 402 (270 SE2d 812) (1980).
[14] (Citations omitted; emphasis in original.) Id. at 406.
[15] See *Ruffin*, 284 Ga. at 62-63 (2) (b) (iii).

because he first asserted his right prior to his case being placed on the trial calendar.[16]

4. *Prejudice to the defendant.* In assessing prejudice against Davis, we consider three factors: "whether there has been oppressive pre-trial incarceration; the anxiety and concern of the accused; and the possibility of harm to the accused's defense[,]" which is the most serious of the three factors "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."[17]

(a) Because Davis was released on bond following his first motion to dismiss in December 2006, he cannot show prejudice from pre-trial incarceration.[18]

(b) Davis also failed to show prejudice from any specific or unusual level of anxiety or concern above that attendant to being the accused in any criminal prosecution.[19]

(c) Davis, however, has made specific claims of impairment to his defense that have occurred due to the delay.[20] Davis contends that he is prevented from introducing exculpatory statements made by two of the robbery victims, who were illegal immigrants and who no longer are in the country. When shown a photographic lineup containing Davis's picture, one of the victims identified another individual in the lineup, and the other victim stated that he did not recognize any of the individuals in the lineup. Nevertheless, the trial court determined that Davis could not show prejudice because Davis's attorney did not make an effort to interview the witnesses prior to trial. We disagree that the attorney's decision not to interview the witnesses precludes Davis from showing prejudice.

The statements given by the witnesses at the time of the robbery or at the time of the lineup are the exculpatory statements that Davis wished to have admitted and are material to his defense. As Davis's attorney explained to the trial judge, the witnesses' current testimony was not really the issue, but merely the vehicle to introduce the prior statements in the event that their testimony as to Davis's identification changed over time. Davis's attorney explained to the trial court that he did not interview the witnesses prior to trial because he wanted to gain a tactical advantage of surprise and

---

[16] See id. at 63-64 (2) (b) (iii).

[17] (Punctuation and footnote omitted.) *Harris v. State*, 284 Ga. 455, 456 (667 SE2d 361) (2008).

[18] See *Christian v. State*, 281 Ga. 474, 477 (2) (640 SE2d 21) (2007).

[19] See id. (citing *Boseman*, 263 Ga. at 733 (1) (d), for the proposition that "anxiety and concern of the accused . . . is always present to some extent, and thus[,] absent some unusual showing[,] is not likely to be determinative in the defendant's favor") (punctuation omitted).

[20] See *Frazier v. State*, 277 Ga. App. 881, 883 (d) (627 SE2d 894) (2006) ("the defendant must offer specific evidence in order to establish prejudice") (punctuation omitted).

perhaps prevent the individuals from "getting their stories straight" between an interview and trial; however, regardless of whether Davis attempted to subpoena the witnesses earlier in the proceedings or whether he attempted to interview them prior to trial, he has shown that the witnesses' prior statements were material to his defense.[21] Thus, he has met the required showing of *Barker*.[22]

Accordingly, because 33 months of the 35-month delay was attributable to the State, and because Davis established that during the delay certain witnesses with material testimony had become unavailable, the trial court abused its discretion by concluding that Davis did not show sufficient prejudice arising from the delay to support his constitutional speedy trial claim.[23]

*Judgment reversed. Blackburn, P. J., and Adams, J., concur.*

## DECIDED NOVEMBER 19, 2009.

*Rodney A. Williams*, for appellant.

*Daniel J. Porter, District Attorney, Nigel R. Lush, Assistant District Attorney*, for appellee.

---

[21] Although the State does not so argue here, this Court previously has determined that a defendant can show prejudice from a missing witness even if the witness's statements could be introduced in some other way. See *Hester v. State*, 268 Ga. App. 94, 100 (4) (601 SE2d 456) (2004) (holding that "[t]he undisputed evidence here showed that an exculpatory witness — who would have described a completely different person as having driven [the defendant's] car at the time of the accident — had died during the delay. In such circumstances, the United States Supreme Court has stated that 'the prejudice is obvious.' ") (citing *Barker*, 407 U. S. at 532 (IV)).

[22] 407 U. S. at 514. See *State v. Bazemore*, 249 Ga. App. 584, 586-587 (1) (d) (549 SE2d 426) (2001) (upholding trial court's finding of prejudice to defendant because the defendant's ex-girlfriend, who was a witness to the incident, had since become hostile toward the defendant and could not be located for testimony); *State v. Yates*, 223 Ga. App. 403, 404 (477 SE2d 670) (1996) (upholding trial court's finding of prejudice to defendant because during the 27-month delay the defense's only witness died). Compare with *Frazier*, 277 Ga. App. at 883 (d) (holding that evidence of prejudice was not specific because the defendant did not explain how the missing witness's undisclosed testimony would have helped his defense); *Nelloms v. State*, 274 Ga. 179, 181 (549 SE2d 381) (2001) (holding that because the State stipulated to allow argument regarding testimony that would have been supplied by the missing witnesses, prejudice to the defendant from the delay was alleviated).

[23] See *Bazemore*, 249 Ga. App. at 586-587 (1) (d); *Yates*, 223 Ga. App. at 404. Compare with *Bowling*, 285 Ga. at 47 (2); *Harris*, 284 Ga. at 457.