## A11A0474. STEWART v. THE STATE.
(713 SE2d 708)

MILLER, Presiding Judge.

Glenn Stewart was indicted on several counts of aggravated child molestation (OCGA § 16-6-4 (c)) and child molestation (OCGA § 16-6-4 (a)). He subsequently filed a motion to dismiss the indictment, alleging a violation of his constitutional right to a speedy trial. The trial court entered an order denying Stewart's motion, from which he appeals. We discern no error and affirm.

We review a "denial of a motion to dismiss the indictment on speedy trial grounds for abuse of discretion. . . ." (Citations omitted.) *Ruffin v. State*, 284 Ga. 52, 65 (3) (663 SE2d 189) (2008).

The record shows that Stewart was arrested on December 16, 2004. Stewart posted bond and was released from custody on March 2, 2005, and has not been in custody since. On or around February 1, 2006, the grand jury returned an indictment charging Stewart with two counts of aggravated child molestation. Stewart was arraigned on May 16, 2006. Stewart's attorney was on a leave of absence from July to October 2006.

Stewart's case first appeared on the trial calendar in March 2007. At the March 7, 2007, calendar call, Stewart's case was continued as Stewart's attorney had a leave of absence that conflicted with the March 2007 trial week. Stewart's case was marked ready and on call for trial at each of the following calendar calls in April, May, and June 2007.

In July 2007, a new prosecutor was assigned to Stewart's case. In familiarizing himself with Stewart's case, the new prosecutor interviewed the victim and determined that the case needed to be reindicted to include additional charges and an additional victim. Stewart's case was thus continued from both the July and August 2007 trial calendars. Stewart's case was also continued from the September 2007 trial calendar, since Stewart's attorney had a leave of absence during part of the September 2007 trial week.

The grand jury returned Stewart's second indictment on September 5, 2007, which, in addition to the previous two counts of aggravated child molestation in his first indictment, set forth an additional count of aggravated child molestation and one count of child molestation. This second indictment also added another count of child molestation involving a second victim. On October 24, 2007, Stewart formally waived his arraignment on the second indictment.

Thereafter, Stewart's case did not appear on the trial calendar at

all during 2008. The record also reflects that Stewart's attorney was scheduled for two leaves of absence during 2008 — one from February 28, 2008, to March 3, 2008, and the other from September 15, 2008, to January 2, 2009. Stewart's case next appeared on the trial calendar in February 2009, and thereafter appeared on each successive trial calendar through December 2009. Stewart was excused from appearing at all but three of the 2009 calendar calls. Out of the eleven calendar calls in 2009, Stewart's case was marked ready and on call for trial at eight of the eleven calendar calls in 2009; at the September 2009 calendar call, he was ordered to appear for trial, but his case was not reached during the trial week. Stewart's case was continued from four of the calendar calls in 2009 — March pursuant to a joint request, May pursuant to the State's request, June due to a leave of absence obtained by Stewart's attorney, and September by the judge.

In March 2010, the prosecutor met with the first victim again. Based on this 2010 meeting, the prosecutor decided to reindict Stewart for a third time to reflect changes in the date ranges of Stewart's charges. The grand jury returned the third and final indictment on April 14, 2010, charging Stewart with the same offenses set forth in the second indictment — three counts of aggravated child molestation and one count of child molestation involving the original victim, and one count of child molestation involving the second victim. Stewart appeared for his arraignment on this third indictment on April 21, 2010. Pursuant to discussions between the prosecutor and Stewart's attorney, the parties understood that the State intended to proceed to trial in May 2010 under this third indictment.

On April 22, 2010, the parties appeared for a previously set hearing on several pretrial motions. At the end of this hearing, Stewart filed for the first time a motion to dismiss the indictment due to a violation of his constitutional right to a speedy trial. Because the State had not been previously informed of Stewart's motion to dismiss, it was not prepared to go forward on the motion at the April 22, 2010, hearing; accordingly, a hearing on the motion was held on June 16, 2010. On July 9, 2010, the trial court entered an order denying Stewart's motion to dismiss. Stewart now appeals from this order.

An analysis of a constitutional speedy trial claim has two stages. The first stage requires a determination of whether the interval from the defendant's arrest, indictment, or other formal accusation to the trial is sufficiently long to be considered "presumptively prejudicial." *Ruffin*, supra, 284 Ga. at 55 (2) (citing *Doggett v. United States*, 505 U. S. 647, 651-652 (112 SC 2686, 120 LE2d 520) (1992)). Where the delay is only ordinary, rather than presumptively prejudicial, the

defendant's speedy trial claim fails at the threshold. Id.; *Doggett*, supra, 505 U. S. at 651-652. A delay that is deemed to be presumptively prejudicial, however, triggers the second stage of the analysis. Id. At this second stage, a court must determine whether the defendant has been deprived of his right to a speedy trial by analyzing a four-part balancing test that considers the conduct of both the State and the defendant (i.e., the *Barker-Doggett* factors): (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay. *Falagian v. State*, 300 Ga. App. 187, 188 (1) (684 SE2d 340) (2009) (citing *Barker v. Wingo*, 407 U. S. 514, 530 (92 SC 2182, 33 LE2d 101) (1972)). "Standing alone, none of these factors are a necessary, or sufficient condition to a finding of deprivation of the right to a speedy trial, but rather should be considered as part of a balancing test." (Citation omitted.) *Davis v. State*, 301 Ga. App. 155, 156 (687 SE2d 180) (2009).

1. *Presumptive Prejudice.* "Speedy trial rights attach at the time of arrest or formal indictment, whichever is earlier." (Footnote omitted.) *Salahuddin v. State*, 277 Ga. 561, 562 (592 SE2d 410) (2004). Here, the relevant interval was the time that elapsed between Stewart's December 16, 2004 arrest and the trial court's July 9, 2010 denial of Stewart's motion to dismiss. Accord id. The State concedes, and we agree, that this case long ago crossed the presumptive prejudice threshold. See *Ruffin*, supra, 284 Ga. at 55 (2) (a); see *Chambers v. State*, 213 Ga. App. 414, 415 (444 SE2d 820) (1994) ("As a delay approaches one year, in general it is presumptively prejudicial.") (Citation omitted.). Therefore, this case must proceed to the second stage *Barker-Doggett* analysis of a constitutional speedy trial claim.

2. *Barker-Doggett Analysis.*

(a) *Whether delay was uncommonly long.* The trial court found that the pretrial delay in this case was uncommonly long and presumptively prejudicial, thus triggering an analysis of the remaining factors under *Barker-Doggett*.

As an initial matter, we find that the trial court misapplied the law by considering the *Barker-Doggett* length of delay factor simultaneously with its determination of whether the pretrial delay was sufficiently long to be considered presumptively prejudicial. While "[t]he length of the pretrial delay in absolute terms plays a role in the threshold determination of presumptive prejudice . . . it also wears another hat as one of the four interrelated criteria that must be weighted in the balance at the second stage of the *Barker-Doggett* analysis." (Punctuation omitted.) *Ruffin*, supra, 284 Ga. at 56 (2) (b) (i). "The uncommon length of the pretrial delay thus merits consideration beyond its use as a liminal screening mechanism." Id. (citing

*Doggett*, supra, 505 U. S. at 652).

Nevertheless, we agree that a pretrial delay of over five years is uncommonly long, and as such, is a factor to be weighed against the State on the *Barker-Doggett* scale. Stewart contends on appeal, however, that our opinion in *Davis*, supra, 301 Ga. App. at 157, requires this factor to be weighed "heavily" against the State. We disagree.

The abuse of discretion we found in *Davis* was a result of the trial court's failure to consider the length of delay factor whatsoever in its *Barker-Doggett* balancing. *Davis*, supra, 301 Ga. App. at 157. Such is not the case here, where the trial court did consider the length of delay factor, albeit simultaneously with the presumptive prejudice factor, and weighed it against the State in the *Barker-Doggett* analysis. As such, we cannot say it was an abuse of discretion insofar as the trial court declined to weigh this factor "heavily" against the State. See, e.g., *State v. Moses*, 301 Ga. App. 315, 317-318 (2) (a), 322 (3) (692 SE2d 1) (2009) (finding no abuse of discretion where the length of pretrial delay, at a little over four years, was weighed as a factor against the State, but not specifically weighed heavily against the State).

(b) *Whether Stewart or the government is more to blame for delay.* The trial court determined that this factor weighed against the State on the *Barker-Doggett* scale. Nevertheless, Stewart again argues that the trial court should have weighed this factor heavily against the State. Again, however, we disagree.

"The weight of this factor is determined by the reason given by the party for the delay and exists on a spectrum between deliberate delay to negligence, with deliberate delay weighed most heavily against the responsible party." *Davis*, supra, 301 Ga. App. at 157 (2).

The first delay in this case was the year and two months that elapsed between Stewart's December 2004 arrest and his February 2006 indictment. Although the State indicated that the police were conducting an ongoing investigation subsequent to Stewart's arrest, the State testified that it could not explain the reason for this first delay. Given the State's failure "to provide a clear reason for the delay[,] . . . we treat the delay as caused by the State's negligence." *Frazier v. State*, 277 Ga. App. 881, 882 (b) (627 SE2d 894) (2006).

Following his first indictment, Stewart was arraigned approximately three months later, on May 16, 2006; thereafter, approximately ten more months elapsed before Stewart's case appeared on the trial calendar. The record reflects that the time between a case's arraignment and appearance on the trial calendar is typically one year. Notably, the trial calendar of the district in which Stewart's case is pending contains approximately 75 to 100 cases at a time, and as required by statute, newer cases are placed on the calendar as the

trial court disposes of the existing cases.[1] Thus, it "appears a large part of the delay was attributable to the number of older cases ahead of [Stewart] on the trial court's docket." *Nairon v. State*, 215 Ga. App. 76, 76-77 (1) (b) (449 SE2d 634) (1994). However, the delay during this time was also partly attributable to Stewart's counsel's leave of absence that spanned July through October 2006.

Starting in March 2007, Stewart's case appeared on seven successive trial calendar calls in 2007. Although Stewart's case was marked ready and on call at three of these calendar calls, it was also continued from four of these 2007 calendar calls — the first due to a leave of absence of Stewart's attorney, the second two as a result of the State's intention to reindict the case, and the final because of both the State's intention to reindict and Stewart's attorney's leave of absence.

With respect to the delay between the removal of Stewart's case from the trial calendar in October 2007 and its reappearance on the trial calendar in February 2009, the prosecutor testified that Stewart's case proceeded on a new indictment number following reindictment, and as such, his case was taken off the trial calendar altogether and placed in the back of the line as a newer case. The prosecutor further explained, however, that it was his mistake that Stewart's case was taken off the trial calendar, and that the trial court's normal procedure requires that a case stay on the trial calendar based on its original indictment number. Also occurring during this time period were two leaves of absence on the part of Stewart's attorney — one from February to March 2008 and the other from September 2008 to January 2009.

Starting in February 2009, Stewart's case appeared on successive trial calendars through March 2010, but was never reached for trial. Stewart's attorney was also scheduled for multiple leaves of absence during this time between February 2009 and March 2010.

In sum, the record shows that the pretrial delay in this case was partially attributable to Stewart, in light of his attorney's multiple leaves of absence. The delay was also somewhat "attributable to the number of older cases ahead of [Stewart] on the trial court's docket." *Nairon*, supra, 215 Ga. App. at 76-77 (1) (b). Nevertheless, a large part of the delay was attributable to the government, not only as a result of the State's multiple reindictments, but also because of the State's negligence and the trial judge's[2] failure to call this case in for

---

[1] See OCGA § 17-8-1 ("The cases on the criminal docket shall be called in the order in which they stand on the docket unless the defendant is in jail or, otherwise, in the sound discretion of the court.").

[2] We note our departure from the trial court's original order to the extent the trial court implicated the State as the party responsible for failing to call Stewart's case for trial. As the

trial during any one of the available trial weeks on which defense counsel had no leaves of absence and had announced ready for trial. "Nowhere in the record, however, is there any evidence that the delay was the result of bad faith." *Frazier*, supra, 277 Ga. App. at 882 (b). Notably, there is no evidence that it "deliberately delayed the trial in an effort to gain a tactical advantage," *Nairon*, supra, 215 Ga. App. at 76-77 (1) (b), or in an effort "to hamper the defense," (citations and punctuation omitted) *Layman v. State*, 284 Ga. 83, 85 (663 SE2d 169) (2008). Consequently, "although the delay attributable to the State is a negative factor, it is relatively benign." (Citations and punctuation omitted.) *Frazier*, supra, 277 Ga. App. at 882 (b).

(c) *Stewart's assertion of right.* The trial court weighed this factor against Stewart on the *Barker-Doggett* scale. We find that the trial court erred to the extent it failed to weigh this factor *heavily* against Stewart. "The relevant question for purposes of the third *Barker-Doggett* factor is whether the accused has asserted the right to a speedy trial 'in due course.'" (Citation and footnote omitted.) *Ruffin*, supra, 284 Ga. at 63 (2) (b) (iii). "This requires a close examination of the procedural history of the case with particular attention to the timing, form, and vigor of the accused's demands to be tried immediately." Id. (Citation and footnote omitted.)

Here, Stewart concedes that he never filed a statutory demand for a speedy trial. Nevertheless, this Court "has repeatedly and consistently recognized that a defendant may assert his constitutional speedy trial right through a motion to dismiss asserting a violation of that right." *State v. Porter*, 288 Ga. 524, 528 (3) (705 SE2d 636) (2011); see also *Ruffin*, supra, 284 Ga. at 62 (2) (b) (iii). Thus, Stewart's April 2010 motion to dismiss was sufficient to assert his constitutional right to a speedy trial. However, Stewart waited over five years, and twenty-one calendar calls, to assert his right.

Despite his delay in asserting his right, Stewart nevertheless cites *Grizzard v. State*, 301 Ga. App. 613, 616-617 (688 SE2d 402) (2009), arguing that the State in this case was "dilatory in pursuing

---

prosecutor himself correctly pointed out, he can ask a judge to try a case on which the State is ready, but the ultimate decision of whether or not to do so rests solely with the trial judge. See *Cuzzort v. State*, 271 Ga. 464, 464 (3) (519 SE2d 687) (1999) ("While a *trial judge* may in his discretion call cases out of order, under [OCGA] § 17-8-1, the *district attorney* is without authority to independently calendar and call cases for trial.") (Emphasis supplied.). Nevertheless, "[t]he relevant inquiry for purposes of the second factor is not whether the *prosecutor* or the accused bears more responsibility for the delay, but whether the *government* or the criminal defendant is more to blame for that delay." (Punctuation and footnote omitted.) *Ruffin*, supra, 284 Ga. at 61 (2) (b) (ii). And the "Supreme Court [of Georgia] has made it clear that in the *Barker-Doggett* analysis, the 'government' includes all state actors, even trial and appellate court judges." Id. (Punctuation and footnote omitted.).

the matter," and that therefore, the trial court should have therefore weighed this factor equally against Stewart *and* the State. We disagree on both counts. First, the State's conduct here does not rise to the level of negligence that we found in *Grizzard*. See *Grizzard*, supra, 301 Ga. App. at 615-616 (1) (b). After the defendant in *Grizzard* was arrested in 2001, over eight years elapsed before the defendant was brought to trial on child molestation charges; for six of those eight years, there was a complete absence of any activity whatsoever on the part of the State. Id. at 613, 616 (1) (a). Moreover,

> [t]he State concede[d] that it did not diligently prosecute the case, that the case had fallen "off the radar" screen, and that even though the State was aware of the case and was responsible for calendaring cases, the case disappeared off the calendar and "just did not get prosecuted" until it began to appear on court calendars [eight years later].

Id. at 613.

Here, on the other hand, the longest period of time during which there was a complete absence of any activity on Stewart's case was between his October 2007 arraignment (on the second indictment) and his appearance on the trial calendar in February 2009. Although the State admitted that this delay was due to its own mistake, Stewart's attorney was also unavailable during some of this time — specifically, February 28, 2008, through March 3, 2008, and September 15, 2008, through January 2, 2009. It was not an abuse of discretion insofar as the trial court declined to weigh equally against the State Stewart's failure to timely assert his right to a speedy trial. That being said, however, we do find error with the trial court's ruling to the extent it did not weigh *heavily* against Stewart his failure to timely assert his right. See, e.g., *Higgins v. State*, 308 Ga. App. 257, 261, 262 (2) (b)-(c), 263 (2) (e) (707 SE2d 523) (2011) (finding that the trial court failed to specifically consider defendant's 22-month delay in asserting his right to a speedy trial as a factor that weighed heavily against the defendant on the *Barker-Doggett* scale); see also *Brown v. State*, 287 Ga. 892, 895 (1) (c), 896 (2) (c) (700 SE2d 407) (2010) (weighing assertion of right factor heavily against co-defendants, one of whom waited more than three years and the other who waited two years, to assert their right to a speedy trial); *Layman*, supra, 284 Ga. at 85-86 (holding that a four-year delay weighed heavily against the defendant).

(d) *Prejudice.* The trial court concluded that Stewart failed to present any evidence showing that the pretrial delay has prejudiced the defense, and that, in some respects, the pretrial delay has

prejudiced the State's case.[3] On appeal, Stewart argues that the fourth *Barker-Doggett* factor should be weighed heavily against the State. We disagree.

With respect to this final *Barker-Doggett* factor, there are three types of prejudice associated with an unreasonable delay before trial: (i) oppressive pretrial incarceration; (ii) anxiety and concern of the defendant; and (iii) the possibility that the defense will be impaired. *Porter*, supra, 288 Ga. at 529 (2) (c) (4). "Of these forms of prejudice, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." (Citation and punctuation omitted.) Id.

Before addressing the trial court's consideration of the three specific types of prejudice, however, we first look at Stewart's contention that this case gives rise to a presumption of actual prejudice. As discussed above in Division 1, such presumption was established by the length of the pretrial delay in this case, and "once the threshold presumptive prejudice is satisfied, a presumption of prejudice always exists, although it increases in weight over time." (Citations omitted.) *Porter*, supra, 288 Ga. at 531 (2) (c) (4). Nevertheless, a finding of presumptive prejudice "cannot alone carry [Stewart's] Sixth Amendment claim without regard to the other *Barker* criteria." (Punctuation and footnote omitted.) *Harris v. State*, 284 Ga. 455, 457 (667 SE2d 361) (2008). Thus, in weighing the fourth *Barker-Doggett* factor, the trial court properly considered each specific type of prejudice, which we address below.

(i) *Oppressive pretrial incarceration.* Stewart does not challenge the trial court's finding on this type of prejudice and concedes that no oppressive pretrial incarceration occurred here. As such, we need not consider it on appeal.

(ii) *Anxiety and concern.* The trial court found that Stewart failed to demonstrate that he experienced any extraordinary anxiety and concern occasioned by the pretrial delay in this case. Stewart contends on appeal that his occupation as a truck driver required frequent out-of-state travel for extended periods of time and that the frequency with which he has had to appear in court impacted his ability to take on work and support his family. Consistent with the trial court's finding, however, the record in this case contains no testimony from Stewart regarding any purported anxiety he might have suffered, nor does it contain any other evidence supporting Stewart's contentions on this issue. Accord *Porter*, supra, 288 Ga. at 530 (2) (c) (4). In any event, Stewart chose not to alleviate his anxiety

---

[3] For example, the State testified that its case has been prejudiced because the details of the victim's allegations have changed over the years.

and concern by waiting over five years to assert his speedy trial demand. Accord *Higgins*, supra, 308 Ga. App. at 262 (2) (d).

(iii) *Impairment of defense.* The trial court found that Stewart failed to present any evidence showing that his defense has been impaired as a result of the pretrial delay. Stewart challenges the trial court's finding, asserting there is evidence that his defense was actually impaired. We disagree.

> The weight given to the prejudice factor may be bolstered if the defendant can demonstrate some actual impairment to his defense in addition to prejudice that is presumed from the passage of time. Likewise, the weight given to presumed prejudice may be reduced or even eliminated if the State can show that the defense has not, in fact, been substantially impaired.

*Porter*, supra, 288 Ga. at 532 (2) (d).

Stewart first points to a lost videotape, which contained a 2004 interview that the police conducted with the victim, contending that such videotape "clearly contained valuable impeachment material." Stewart claims that given the passage of time, the memories of the police interviewer and the victim regarding the particular statements made in that 2004 interview have been significantly impaired. As an initial matter, there is no showing that the police detective who conducted the interview (and who is in fact a witness for the State) would be unable to recall statements made by the victim during the 2004 interview. Moreover, as the trial court correctly noted, "[m]erely asserting that memories have faded over time does not satisfy [the impairment] requirement." (Citations and punctuation omitted.) *Lambert v. State*, 302 Ga. App. 573, 577 (4) (692 SE2d 15) (2010). Moreover, given Stewart's contention that the State knew about the lost videotape as early as 2005, we find that the pretrial delay in this case actually benefitted Stewart's defense insofar as it gave rise to additional impeachment material that Stewart would otherwise have been without had this case timely proceeded to trial. Notably, the prosecutor testified that he was personally aware of two statements made by the victim in the prosecutor's 2010 interview that differed from the statements made by the victim in the prosecutor's 2007 interview.

Stewart next points to diminished recollections of the interview the prosecutor conducted with the victim in 2007. Stewart claims that the prosecutor's 2007 interview was not recorded and the passage of time has diminished the memories of the prosecutor and the victim. Again, however, Stewart's assertion that memories have faded over time does not satisfy the requirement of showing actual

prejudice. See *Lambert*, supra, 302 Ga. App. at 577 (4). Moreover, the prosecutor's testimony demonstrates that he does in fact recollect his 2007 interview with the victim; notably, "he was the only witness who could remember the 2007 statements" of the victim; to the extent that the victim's 2007 and 2010 statements conflicted, the prosecutor was disqualified and required to become a witness in the case. The prosecutor's testimony further reflects that the evidence in this case contains notes that he recorded during the 2007 interview, the relevant portions of which the State produced to Stewart.

Stewart's third contention of impairment is that he was working as a truck driver in Iraq during 2006 and only returned home for brief visits; he argues that his ability to produce documentation as to his whereabouts, particularly during the time between his arrest and first indictment, has significantly diminished given the passage of time. Stewart's claim is without merit. During this 2006 time frame, Stewart was aware that he had been arrested for the aggravated child molestation offense. Thus, Stewart's failure to preserve evidence following his 2004 arrest is not a result of pretrial delay, but rather Stewart's own negligence. See *Herndon v. State*, 277 Ga. App. 374, 379 (4) (c) (626 SE2d 579) (2006) ("[Defendant claimed] that documents were lost which would have shown that he did not live at a residence from which inculpatory evidence was seized[;] [a]t the hearing on his motion, however, [defendant] offered no evidence of his alleged inability to gather or preserve evidence."); *Nairon*, supra, 215 Ga. App. at 77 (1) (d) ("We find no evidence that the delay caused [defendant] to lose his briefcase [which was claimed to have contained the defendant's trial preparation materials] or caused other actual, substantial prejudice to the defendant.").

Stewart's final assertion of impairment is that the witnesses' recollections of events and the ability of the defense to challenge the credibility of the witnesses have been significantly impacted by the pretrial delay. To demonstrate an impaired defense, however, Stewart must present more than vague or conclusory statements. *Lambert*, supra, 302 Ga. App. at 577 (4). Moreover, Stewart's assertion fails since it likewise consists of nothing more than mere assertions that memories have faded over time.[4] Id.

---

[4] In an attempt to fit the instant case under the particular circumstances of *Moses*, supra, 301 Ga. App. at 322 (2) (d), Stewart argues that the videotape of the 2004 police interview with the victim, as well as Stewart's ability "to produce 'alibi' evidence in the form of pay-stubs, plane tickets or other pertinent documents," are both material to Stewart's case. We are not convinced. In *Moses*, we affirmed the trial court's finding that the defendant successfully showed his defense would be hampered in that any possible alibi witnesses (the defendant indicated at the hearing on his motion to dismiss that his intent was to call alibi witnesses to establish his whereabouts at the time the crime was committed) would be deemed less credible by a jury because they will assume memory issues due to the four years of delay. 301 Ga. App.

(e) *Barker-Doggett balancing.* While we certainly do not approve of the delay occasioned in this case, "[a] trial court exercises substantial discretion in applying the *Barker* balancing test, and its ultimate judgment is reviewed on appeal only for abuse of that discretion." (Citation and punctuation omitted.) *Porter*, supra, 288 Ga. at 533 (2) (e). In balancing the first *Barker-Doggett* factor, the trial court properly weighed the length of delay against the State, although the trial court did err in failing to consider the length of delay factor separately from its threshold presumptive prejudice analysis. As to the reason for delay, the trial court properly weighed this factor against the State, taking into account Stewart's contribution to some of the delay and the government's relatively benign culpability. With respect to Stewart's delay of over five years in asserting his right to a speedy trial, however, the trial court erred in failing to weigh this factor heavily against Stewart. Finally, although the substantial pretrial delay established a presumption of actual prejudice, the trial court correctly determined that Stewart failed to substantiate this presumption with any evidence of actual impairment or extraordinary anxiety and concern.

Although the trial court's analysis was somewhat flawed, and therefore our deference to the trial court diminished, see *Porter*, supra, 288 Ga. at 533 (2) (e), we cannot say in this case that the trial court abused its discretion by denying Stewart's motion to dismiss. Cf. *Henderson v. State*, 290 Ga. App. 427, 431-432 (1) (d), (e) (662 SE2d 652) (2008).

*Judgment affirmed. Ellington, C. J., and Doyle, J., concur.*

DECIDED JULY 6, 2011.

*Maryann F. Blend*, for appellant.
*Daniel J. Porter, District Attorney, Franklin P. Clark, Samantha Routh, Assistant District Attorneys*, for appellee.

at 322 (2) (d).

In reaching our conclusion in *Moses*, we reasoned that "[a]lthough a generalized statement that the memories of witnesses have faded over time is not deemed sufficient, memory lapses that substantially relate to a material issue are deemed prejudicial." Id. Stewart's arguments merely assert generalized memory lapses and fail to show that they relate to material issues. Accord *Threatt v. State*, 282 Ga. App. 884, 890-891 (d) (640 SE2d 316) (2006) ("While [the defendant] further alleges that the detective's memory about his investigation has faded, those memory lapses must substantially relate to a material issue to be prejudicial. . . . [However, the defendant] has not shown how [the detective's] failings of memory [about inconsequential information] substantially related to a material issue or would hamper the presentation of his defense on retrial.") (citations and punctuation omitted).